## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **FRANK V. THOMAS JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-13-578-F** |
| | ) | |
| **ROBERT PATTON, Director,** | ) | |
| | ) | |
| **Respondent.**[1] | ) | |

### REPORT AND RECOMMENDATION

Petitioner Frank V. Thomas Jr., a state prisoner appearing pro se, has filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus and supporting exhibits, challenging the constitutionality of his criminal conviction by the State of Oklahoma. *See* Doc. Nos. 1, 1-1, 1-2, 1-3. Respondent ODOC Director Robert Patton has filed a Response to Petition for Writ of Habeas Corpus (Doc. No. 13), to which Petitioner has replied (Doc. No. 17). United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636. As outlined herein, the undersigned recommends that the Petition be DENIED.

---

[1] In his Petition, Petitioner named as Respondent the warden of the facility at which he was incarcerated when the Petition was filed. *See* Pet. (Doc. No. 1). Due to Petitioner's subsequent transfer to a privately operated facility, *see* Doc. No. 22, the proper Respondent now is the Director of the Oklahoma Department of Corrections ("ODOC"), Robert Patton. Accordingly, Director Patton is hereby substituted as the sole Respondent in this proceeding. *See* Director's Office, Okla. Dep't of Corr., http://www.ok.gov/doc/About_Us/Director's_Office/ (last visited Mar. 19, 2015); 28 U.S.C. § 2243; R. 1(a), 2(a), 12, Rules Governing Section 2254 Cases in the United States District Courts; Fed. R. Civ. 25(d), 81(a)(4).

## I. Relevant Case History and Issues Presented

On April 18, 2009, at approximately 2:40 a.m., police officers responded to a 911 call reporting a domestic dispute at 1404 North Midwest Boulevard, Apartment #F, in Midwest City, Oklahoma. Vol. II Trial Tr. 30-31, 76, 98, 190-91 (*State v. Thomas*, No. CF-2009-2632 (Okla. Cnty. Dist. Ct. Feb. 22-24, 2010)) (Doc. No. 15). When Midwest City police officers arrived outside the door of Apartment #1404F, they could hear a woman "screaming for help," "crying," and "in distress." Vol. II Trial Tr. 76-77, 99. The officers knocked and announced their presence, but no one opened the door. After approximately two minutes, they forced the door open and encountered Petitioner standing in the apartment's living room. Vol. II Trial Tr. 77, 98-99, 191. Petitioner's girlfriend, Christal Mahan, was crying audibly from inside the bathroom. Vol. II Trial Tr. 77-78, 99-100. After Petitioner had been taken from the apartment by the police, Ms. Mahan told the officers that that there was a locked room in the apartment, to which Petitioner had the only key, and that she believed Petitioner kept a gun and drugs in a safe inside that locked room. Vol. II Trial Tr. 36-38, 82-83. The police obtained a search warrant and later found in that locked room a locked safe containing powdered cocaine, crack cocaine, marijuana, scales, cash, and other items. Vol. II Trial Tr. 83, 92-94; Pet'r's App. Br. (Doc. No. 13-1) at 34.[2]

Petitioner ultimately was charged by information with two felony drug crimes and a misdemeanor domestic abuse offense. Original Record ("OR") 1-6, 186-91, 239 (Doc.

---

[2] References to documents filed electronically in this Court use the page numbers assigned by the Court's electronic filing system.

No. 15).  On February 24, 2010, following a jury trial in the District Court of Oklahoma County, Petitioner was convicted of: Trafficking in Illegal Drugs (Cocaine Base) after prior felony conviction, in violation of Title 63, Section 2-415 of the Oklahoma Statutes; Possession of a Controlled Dangerous Substance (Marijuana) with Intent to Distribute after prior felony conviction, in violation of Title 63, Section 2-401 of the Oklahoma Statutes; and Domestic Abuse (Assault and Battery), in violation of Title 21, Section 644(C) of the Oklahoma Statutes.  Vol. III Trial Tr. 275; OR 192-94, 258; *see State v. Thomas*, No. CF-2009-2632 (Okla. Cnty. Dist. Ct. filed Apr. 27, 2009).  On March 5, 2010, Petitioner was sentenced to 50 years' imprisonment and a $40,000 fine on Count One, four years' imprisonment on Count Two, and a $5000 fine on Count Three, in accordance with the jury's recommendation following a second-stage sentencing proceeding as to Counts One and Two, with all Counts to run concurrently with each other.  OR 194, 240-49, 260; Vol. II Trial Tr. 218; Sent'g Tr. 5-6 (Mar. 5, 2010) (Doc. No. 15).

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA").  OR 250-57; *see Thomas v. State*, No. F-2010-237 (Okla. Crim. App. filed Mar. 16, 2010).[3]  On appeal, Petitioner's appellate counsel filed a brief on Petitioner's behalf; Petitioner also attempted to file a "pro se" "supplemental" brief with the OCCA, raising additional propositions of error.  *See Thomas v. State*, No. F-

---

[3] The docket sheets for *State v. Thomas*, No. CF-2009-2632, District Court of Oklahoma County (filed Apr. 29, 2009), and *Thomas v. State*, No. F-2010-237, Oklahoma Court of Criminal Appeals (filed Mar. 16, 2010), are publicly available through http://www.oscn.net.

2010-237 (docket entries from August 24, 2010, through March 18, 2011). The OCCA refused to consider Petitioner's first and second pro se supplemental briefs, due to Petitioner being represented by counsel, but ultimately accepted Petitioner's "3rd Amended Supplemental Pro Se Brief of Appellant" for filing (after Petitioner's appellate counsel sought to substitute Petitioner's already tendered brief with one bearing the requisite certification of counsel). *See Thomas v. State*, No. F-2010-237 (docket entry of Mar. 18, 2011); Pet'r's Br. (Doc. No. 13-1); Pet'r's Supp. Br. (Doc. No. 13-2); Okla. Crim. App. R. 3.5(A). On June 24, 2011, the OCCA affirmed Petitioner's conviction and sentence. *See* OCCA Op., No. F-2010-237 (Doc. No. 13-4). On March 14, 2012, Petitioner filed an application for postconviction relief in the trial court, which was denied on July 10, 2012. Pet'r's Postconviction App. (Doc. No. 13-5); Doc. No. 13-6. Petitioner appealed to the OCCA; that court affirmed the denial of postconviction relief on May 6, 2013. Pet'r's Postconviction Br. (Doc. No. 13-7); OCCA Postconviction Order, No. PC-2012-1052 (Doc. No. 13-8).

Petitioner then filed this federal habeas corpus action raising thirty-five (35) separate grounds for relief. *See* Pet. (filed June 5, 2013). Respondent concedes that Petitioner's habeas claims are timely brought. *See* Resp't's Resp. (Doc. No. 13) at 3. Respondent further concedes that Petitioner has exhausted his state-court remedies with respect to the grounds raised in his Petition, with the exceptions of Ground 6 and Ground 8, as discussed below. *See* Resp't's Resp. at 3.

## II.    The Standard of Review

The Tenth Circuit has summarized the standard of review for evaluating state-court legal determinations that have been challenged in federal court through a 28 U.S.C. § 2254 habeas proceeding:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt. If a claim has been "adjudicated on the merits in State court proceedings," we may not grant relief under § 2254 unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.
>
> Under the "contrary to" clause of § 2254(d)(1), we may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. An unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted).

Pursuant to AEDPA, factual findings made by a state trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28

U.S.C. § 2254(e)(1). The standard for relief prescribed by AEDPA is high: "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## III.    Analysis

The Petition and supporting documents submitted by Petitioner contain duplicative claims, frequently irrelevant or incoherent arguments, and cross-references to arguments made in state court proceedings that suffer from the same flaws. Nevertheless the undersigned has liberally construed Petitioner's filings and carefully reviewed "the facts and the pleadings" in order "to ascertain what occurred in prior state proceedings and the true nature of Petitioner's claims" and to ensure "substantial justice." *See Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). In light of the disjointed nature of Petitioner's filings, the Petition is addressed herein using much of the same grouping of claims as that applied by Respondent. *See* Resp't's Resp. at 5-73.

### A. Grounds 1, 5, 11, 12: Violation of Fourth Amendment

Petitioner argues that his conviction violates the Fourth Amendment of the U.S. Constitution because: (i) the probable-cause affidavit, based upon Ms. Mahan's statements, relied upon to secure the search warrant for Apartment #1404F was inadequate (Ground 1); (ii) the police officers' warrantless entry into Apartment #1404F was not justified by exigent circumstances (Ground 5); (iii) the trial court improperly

denied Petitioner's motions to suppress evidence seized from Apartment #1404F (Ground 11); and (iv) Petitioner's arrest was unlawfully performed without probable cause to believe that Petitioner committed domestic abuse (Ground 12).  Pet. at 6-7, 18-21, 33, 34-35.

Petitioner sought suppression of evidence seized from Apartment #1404F through both a pro se motion to suppress and a motion to suppress filed by his trial counsel.  *See* OR 95-100, 106-07.  The trial court denied the request after the State presented its evidence.  Vol. II Trial Tr. 185-86.  Petitioner then raised Grounds 1 and 11, relating to the probable-cause affidavit, on direct appeal to the OCCA through the brief filed by appellate counsel.  Pet'r's App. Br. at 14-17.  Petitioner argued Grounds 5 and 12 on direct appeal to the OCCA through his Supplemental Brief.  Pet'r's Supp. Br. at 11-14. The OCCA denied relief on the merits on all grounds, holding:

> [T]he search warrant in this case was not based on an anonymous tip or confidential informant, but on information supplied by Appellant's own girlfriend.  Given the undisputed relationship between Appellant and Mahan, and her personal knowledge of the premises in which she lived, the magistrate had a substantial basis for finding probable cause to believe that evidence of illegal drug activity could be found in there.
>
> . . . .
>
> . . . Appellant alleges that all evidence used against him should have been suppressed because the officers' warrantless entry into the apartment was illegal for lack of exigent circumstances.  Because this issue was not raised below, we review only for plain error, and find no error of any kind. The officers responded to a neighbor's 911 call concerning a woman in distress.  Before forcibly entering the apartment the officers heard sounds corroborating the neighbor's assertions: they announced their presence, and waited several minutes but received no response.  Appellant's lengthy arguments about what the officers did or did not observe once they were inside the apartment is irrelevant; the record supports a finding of exigent circumstances at the time of entry.  This proposition is denied.

OCCA Op. at 2-3, 5 (citations omitted) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)); *see also Matthews v. Workman*, 577 F.3d 1175, 1186 n.4 (10th Cir. 2009) (refusing to find a claim procedurally defaulted when the OCCA had reviewed for plain error because the Tenth Circuit has held that such a state-court decision "is a merits determination entitled to ordinary AEDPA deference"). The OCCA did not explicitly address that aspect of Petitioner's claim regarding lack of probable cause to arrest, which was offered in support of Petitioner's lack-of-exigent-circumstances argument rather than as a separate proposition of error. Pet'r's Supp. Br. at 7. However, a state court's summary opinion denying a federal claim is presumed to have been issued on the merits, absent any indication to the contrary, even if no basis in state or federal law is cited in support of the opinion. *See Harrington*, 562 U.S. at 99-100; *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) (holding presumption noted above is rebuttable in limited circumstances).

Pursuant to *Stone v. Powell*, 428 U.S. 465, 481-82 (1976), "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." The habeas court "review[s] de novo whether a petitioner had an opportunity for full and fair litigation of his or her Fourth Amendment claim in state court." *Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999).

The Tenth Circuit held in *Smallwood* that the rule of *Stone v. Powell* barred habeas relief on a Fourth Amendment claim where (i) the petitioner had filed a motion to suppress and objected to the allegedly unlawful evidence in the trial court, and (ii) on direct appeal "[t]he state courts thoughtfully considered the facts underlying petitioner's Fourth Amendment claim and rejected the claim on its merits, applying the appropriate Supreme Court precedent." *See id.*; *accord Matthews*, 577 F.3d at 1194. Here, likewise, Petitioner raised his Fourth Amendment claims in both the trial and appellate state courts, and received thorough consideration of his claims, pursuant to appropriate authority, by the OCCA. "Nothing in the record indicates that [Petitioner] was deprived of [the required full and fair] opportunity [to litigate his Fourth Amendment claims]." *See Smallwood*, 191 F.3d at 1265. Plaintiff's Grounds 1, 5, 11, and 12 should be denied.

## B. Grounds 2, 13, 33, 34: Alleged Violations of Oklahoma Law

### 1. Ground 2

Petitioner claims that he was deprived of a fair trial because the trial court failed to sua sponte instruct the jury regarding the need for corroboration of accomplice testimony—i.e., the need for additional evidence to corroborate the testimony of Petitioner's girlfriend Christal Mahan. *See* Pet. at 8-10. Petitioner raised this argument on direct appeal. Pet'r's App. Br. at 18-20. The OCCA rejected Petitioner's argument on the merits:

> As to Proposition 2, Appellant did not ask for accomplice-corroboration instructions, so this claim is reviewed only for plain error. Because we find that Mahan's testimony was sufficiently corroborated by other evidence, the trial court did not plainly err by failing to instruct the jury on accomplice corroboration. Proposition 2 is denied.

OCCA Op. at 3 (citations omitted); *Matthews*, 577 F.3d at 1186 n.4; *see Pink v. State*, 104 P.3d 584, 590 (Okla. Crim. App. 2004) (noting that Title 22, Section 742 of the Oklahoma Statutes requires that accomplice testimony "must be corroborated by evidence that links the defendant to the commission of the crime"); *see also* Okla. Unif. Crim. Jury Instruction Nos. 9-25, 9-28 (2d ed. 1996 & Supp. 2000).

In so arguing, Petitioner attempts to seek relief for an alleged violation of state, not federal, law. "The Constitution does not prohibit convictions based primarily on accomplice testimony." *Scrivner v. Tansy*, 68 F.3d 1234, 1239 (10th Cir. 1995) (citing *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993) ("State laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review." (alteration omitted))). A violation of state law does not, by itself, amount to a deprivation of due process to Petitioner in his criminal proceedings. In a habeas action, a federal court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "Federal habeas corpus relief does not lie for errors of state law" such as the alleged infirmity cited by Petitioner. *See id.* at 67 (internal quotation marks omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68.

Rather, the pertinent question is whether the trial court's failure to sua sponte issue an accomplice-corroboration instruction "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." *Maes v. Thomas*, 46 F.3d 979,

984 (10th Cir. 1995). The issue is "not whether the instruction is undesirable, erroneous, or even universally condemned, but whether the instruction so infected the trial that the resulting conviction violates due process." *Id.* (internal quotation marks omitted). "'An omission . . . is less likely to be prejudicial than a misstatement of the law.'" *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). "The degree of prejudice from the instruction error must be evaluated in the context of the events at the trial." *Id.*

In this case, Petitioner has not shown that the trial court's failure to specially instruct on accomplice corroboration resulted in a fundamentally unfair trial. "There is . . . no constitutional requirement that accomplice testimony be corroborated." *Nix*, 983 F.2d at 874. As specifically outlined below in Part III.C, various items of evidence—not only Ms. Mahan's testimony—were introduced that connected Petitioner with the commission of the charged offenses and that were sufficient to support Petitioner's conviction for those offenses. In this habeas proceeding, the Court "may not weigh conflicting evidence []or consider the credibility of witnesses" such as Ms. Mahan but must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998) (internal quotation marks omitted); *accord Scrivner*, 68 F.3d at 1239. The trial court's failure to sua sponte offer an accomplice-corroboration instruction did not render the trial "fundamentally unfair," and the OCCA's decision in this regard was not contrary or an unreasonable application of clearly established federal law. *See Maes*, 46 F.3d at 984; 28 U.S.C. § 2254(d)(1).

2. <u>Ground 13</u>

In Ground 13, Petitioner argues that the trial court erred by admitting letters Petitioner wrote to Ms. Mahan following his arrest because the letters constituted evidence of Petitioner's "other crimes" or bad acts improperly offered by the State in order to show Petitioner took action in conformity therewith. *See* Pet. at 35; Pet'r's Postconviction App. at 32-40 (Proposition III); Okla. Stat. tit. 12, § 2404(B) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). Petitioner failed to raise this argument on direct appeal, instead later seeking relief from the trial court in his application for postconviction relief. *See* Pet'r's Postconviction App. at 32-40. The trial court denied relief, noting that issues that "could have been raised in a timely direct appeal, but were not, are waived." Doc. No. 13-6 at 6. On appeal of denial of postconviction relief, rather than acknowledging this procedural default, the OCCA declined to reach the merits of the argument on the incorrect basis that the claim had been previously raised and disposed of on direct appeal and, thus, Petitioner's claim was barred on res judicata grounds. *See* OCCA Postconviction Order (Doc. No. 13-8) at 5.

The undersigned assumes, therefore, that Petitioner's claim is entitled to de novo review. *Cf. Davis v. Workman*, 695 F.3d 1060, 1073 (10th Cir. 2012) (holding that where no court had addressed the merits of petitioner's ineffective-assistance-of-counsel claim, the appellate court would review the claim de novo). But even under that standard Petitioner is not entitled to federal habeas relief based upon the trial court's alleged violation of the Oklahoma Evidence Code.

Federal habeas corpus relief does not lie for errors based solely on alleged violations of state law, such as the trial court's alleged failure to comply with the "other crimes" statute, Okla. Stat. tit. 12, § 2404(B). *See Estelle*, 502 U.S. at 67-68. The Court instead reviews such evidentiary objections to determine whether the alleged error was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (alteration and internal quotation marks omitted); *accord Ochoa v. Workman*, 669 F.3d 1130, 1144 (10th Cir. 2012). The Petition does not offer explanation for how admission of purported "other crimes" evidence such as Petitioner's letters rendered his criminal trial fundamentally unfair, *see* Pet. at 35, and the undersigned's review of the transcript and record does not reflect that these letters were unduly prejudicial to Petitioner. Christal Mahan testified that she had received a box full of letters from Petitioner, and the trial court admitted five of them into evidence. Vol. II Trial Tr. 42-46; State's Ex. 2 (Doc. No. 26). Petitioner himself confirmed on the witness stand that he had written the letters and was permitted to testify about their contents on redirect examination. Vol. II Trial Tr. 198-201, 204-07. The State's questioning regarding the letters primarily focused upon Petitioner's attempts to instruct or threaten Ms. Mahan regarding her participation in Petitioner's criminal proceedings, not upon any prior acts of Petitioner. *See, e.g.*, Vol. II Trial Tr. 47-49, 204; *cf. Dodd v. State*, 100 P.3d 1017, 1031 (Okla. Crim. App. 2004) ("[E]vidence that the defendant has intimidated, threatened or attempted to bribe witnesses who might be called to testify against him for

the original offense is generally admissible.").  Habeas relief is not warranted on Ground 13.

### 3.  Grounds 33 and 34

In Grounds 33 and 34, Petitioner seeks habeas relief because the "Preliminary Court erred in bounding defendant over for trial & in overruling defense objection to establish proper foundation" and both the "Preliminary Court & Trial court erred in admitting evidence lacking proper & complete chain of custody where evidence was tampered with by officers & prosecutors, also shown to have lied."  Pet. at 46.  Several months after Petitioner's arrest, the trial court conducted a preliminary hearing and ordered that Petitioner be bound over for trial.  OR 20; *State v. Thomas*, No. CF-2009-2632 (docket entry of Sept. 29, 2009); Preliminary Hr'g Tr. (Sept. 29, 2009) (Doc. No. 28).  *See generally* Okla. Stat. tit. 22, § 258(8) ("The purpose of the preliminary hearing is to establish probable cause that a crime was committed and probable cause that the defendant committed the crime.").  Construed liberally and with reference to Petitioner's other filings (as the undersigned has construed all of Petitioner's grounds for relief), Petitioner claims that the state court lacked sufficient and properly admitted evidence of probable cause to retain Petitioner for trial on the criminal charges and that the state court violated his due process rights in admitting evidence, at both the preliminary hearing and at trial, that lacked a proper chain of custody and about which the police officers and the State had "lied."  *See* Pet. at 46; Pet'r's Postconviction App. at 108-11.

Petitioner raised these claimed errors in his Supplemental Brief on direct appeal (in support of a broader due process argument) and then attempted to raise them again in

his Postconviction Application.  *See* Pet'r's Supp. Br. at 14-16; Pet'r's Postconviction App. at 104-11 (Propositions XXIII, XXIV).  On direct appeal, the OCCA considered Petitioner's argument in the context of his challenge to the sufficiency of the evidence showing Petitioner's dominion and control over the drugs seized in the apartment and denied relief on the merits.  OCCA Op. at 6.  The trial court denied postconviction relief, noting that an issue that was raised on direct appeal is barred from further consideration by res judicata.  Doc. No. 13-6 at 6.  On postconviction appeal, the OCCA correctly found that these claimed errors were barred because they already had been raised and addressed on direct appeal.  OCCA Postconviction Order at 5.

Petitioner's primary argument—that insufficient proper evidence was presented at the preliminary hearing to establish probable cause and bind him over for trial under Oklahoma statute—presents an alleged state-law error and "is not redressable by way of a habeas petition."  *Powers v. Dinwiddie*, 324 F. App'x 702, 704-05 (10th Cir. 2009).

> A § 2254 petition challenges the validity of a state prisoner's conviction and sentence, and the Supreme Court has long held that an "illegal arrest or detention does not void a subsequent conviction."  Because [the petitioner] was ultimately convicted, his claim regarding the sufficiency of the evidence at his preliminary hearing cannot be grounds for habeas relief.

*Id.* (citation omitted) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)).

Further, "[c]hain of custody issues . . . turn on interpretations of state law and are generally not cognizable under 28 U.S.C. § 2254."  *Campbell v. Workman*, No. CIV-09-174-C, 2010 WL 1372540, at *12 (W.D. Okla. Jan. 28, 2010) (report and recommendation) (citing *Summer v. Mata*, 455 U.S. 591 (1982); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)), *adopted*, 2010 WL 1372538 (W.D. Okla. Mar.

31, 2010), *and appeal dismissed*, 386 F. App'x 809 (10th Cir. 2010). Petitioner's sparse and incoherent contentions that items were improperly removed from and/or returned to the safe that was found in Apartment #1404F do not reasonably support the conclusion that Petitioner was denied a fundamentally fair trial due to improper handling of the evidence from the safe. *See Revilla*, 283 F.3d at 1212; Pet. at 46; Pet'r's Supp. Br. at 14-16; Pet'r's Postconviction App. at 108-11; *cf.* Vol. II Trial Tr. 86-87, 92-95, 118-20 (police officers' testimony reflecting that the officers had knowledge of the handling of the safe, observed the opening of the safe, and catalogued the safe's contents). To the extent Petitioner attempts to implicate prosecutorial misconduct under *Brady v. Maryland*, 373 U.S. 83 (1983), the undersigned addresses and rejects this basis for relief in Part III.E below. And to the extent Petitioner raises a sufficiency-of-the-evidence claim on these Grounds regarding his criminal drug charges, Petitioner has not shown that the OCCA's rejection of this claim was unreasonable or contrary to clearly established federal law, as discussed in Part III.C below. *See* 28 U.S.C. § 2254(d)(1).

## C. Grounds 3, 26, 27: Insufficiency of the Evidence

Petitioner asserts that the evidence presented at trial was insufficient for a jury to have found, beyond a reasonable doubt, that he committed the drug-related convictions (Counts 1 and 2). *See* Pet. at 11-13 (Ground 3), 43-44 (Ground 26), 44 (Ground 27).

In reviewing a habeas challenge based on the sufficiency of the evidence, a federal court "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). For habeas review, "the relevant question

is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The reviewing court considers both direct and circumstantial evidence in determining whether evidence is sufficient to support a conviction. *Lucero*, 133 F.3d at 1312. As noted, the Court "may not weigh conflicting evidence []or consider the credibility of witnesses" but must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *See id.* (internal quotation marks omitted).

Here, the sufficiency inquiry is based on the substantive elements of the crimes as defined by Oklahoma law. *See Jackson*, 443 U.S. at 309, 324 n.16. As relevant to this case, the elements of Count 1 - Trafficking in Illegal Drugs (Cocaine) are that the defendant: (1) knowingly; (2) possessed; (3) not less than 5 grams of cocaine base. Okla. Unif. Crim. Jury Instruction No. 6-13; Okla. Stat. tit. 63, § 2-415; *see* OR 204 (Jury Instruction No. 8). As relevant to this case, the elements of Count 2 - Possession with Intent to Distribute (Marijuana) are that the defendant had: (1) knowing and intentional; (2) possession; (3) of the controlled dangerous substance of marijuana; (4) with intent to distribute marijuana. Okla. Unif. Crim. Jury Instruction No. 6-4; Okla. Stat. tit. 63, § 2-401; see OR 205 (Jury Instruction No. 9).

With respect to both offenses, Petitioner specifically contends that the evidence does not support the element of possession—i.e., that Petitioner "possessed" the requisite quantity of cocaine base or the controlled dangerous substance of marijuana. According to Petitioner, the State did not establish this element because: the locked room and the

safe "belonged to" Ms. Mahan "&/or others," Ms. Mahan was not searched for a key to the room, Petitioner was searched but no key was found, and Ms. Mahan admitted to using drugs and testified that Petitioner did not have access to the locked room. Pet. at 11-13, 43-44. Under Oklahoma law, "the bare fact of physical proximity between the defendant and the contraband [is] insufficient to establish the 'dominion and control' requisite to a finding of possession." Okla. Unif. Crim. Jury Instruction No. 6-4 committee's comment. As the jury was specifically instructed, the requisite possession means: "Actual physical custody, *or knowledge of the substance's presence*, as well as power and intent to control its use or disposition." OR 207-08 (Jury Instruction No. 11) (emphasis added); *see* Okla. Unif. Crim. Jury Instruction Nos. 6-4, 6-16. The jury additionally was properly instructed that the possession prohibited by the law includes "constructive possession," which may be established by circumstantial evidence and means that a person "knowingly has the power and the intention at a given time to exercise dominion and control over a thing." OR 209-10 (Jury Instruction No. 12); *see* Okla. Unif. Crim. Jury Instruction No. 6-11; *Johnson v. State*, 764 P.2d 530, 532 (Okla. Crim. App. 1988).

With respect to Count 2, Petitioner additionally challenges the sufficiency of evidence that he had intent to distribute marijuana because "[t]here was No testimony [that Petitioner] ever sold" marijuana. Pet. at 43-44. In accordance with Oklahoma law, the jury was instructed that "distribute" "means to deliver other than by administering or dispensing a controlled dangerous substance." OR 207-08 (Jury Instruction No. 11); Okla. Unif. Crim. Jury Instruction No. 6-16. "In many instances, the sheer quantity of

the narcotic substance found, as well as the presence of sale paraphernalia, or the fact of individual packaging, is deemed sufficient circumstantial evidence of intent to allow presentation of the case to the jury." Okla. Unif. Crim. Jury Instruction No. 6-4 committee's comment (citing cases).

Petitioner raised these same claims of error to support his insufficiency-of-the-evidence argument on direct appeal in state court, through both his counsel's brief and his Supplemental Brief. The OCCA denied relief on the merits, stating:

> Appellant challenges the sufficiency of the evidence to support his drug-related convictions. Mahan testified that Appellant sold cocaine and marijuana, that he kept his inventory in a safe, and that the safe was in a locked room to which she had no access. The items found in the room, and in the safe, corroborated Mahan's claim that Appellant had exclusive access to that area of the apartment. A rational juror could find that Appellant exercised dominion and control over the contraband. *Warner v. State*, 2006 OK CR 40, ¶ 118, 144 P.3d 838, 878. Proposition 3 is denied.

OCCA Op. at 3 (citation omitted); *see also id.*at 6 (referring to this disposition as a finding that "the evidence presented at trial was sufficient to support these convictions").

Because the OCCA applied a standard analogous to that of *Jackson v. Virginia*,[4] this Court's task regarding the OCCA's application of that standard "is limited by AEDPA to inquiring whether the OCCA's application of *Jackson* was unreasonable" or was contrary to the U.S. Supreme Court's holding in that case, pursuant to 28 U.S.C. §

_____

[4] The OCCA's application of the *Jackson* standard is reflected in its citation to and analysis of Petitioner's sufficiency-of-the-evidence argument under *Warner*. In *Warner*, the OCCA specifically noted that it had adopted the *Jackson* standard for sufficiency-of-the-evidence arguments in *Spuehler v. State*, 709 P.2d 202 (Okla. Crim. App. 1985). *See Warner*, 144 P.3d at 878. "That the OCCA did not cite *Jackson* is of no moment; state courts need not refer to, or even be aware of, controlling Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Matthews*, 577 F.3d at 1183 n.2 (internal quotation marks omitted).

2254(d)(1).  *See Matthews*, 577 F.3d at 1183.  To the extent Petitioner's challenge presents a mixed question of fact and law, the Court's review also is governed by 28 U.S.C. § 2254(d)(2), and the Court "ask[s] whether the facts are correct" in determining whether the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented."  *Hooks v. Workman*, 689 F.3d 1148, 1165 (10th Cir. 2012) (noting that when a sufficiency challenge was resolved on the merits by the state courts, the federal habeas standard of review is "deference squared"); 28 U.S.C. § 2254(d)(2).  The OCCA was not obligated to determine whether it believed the evidence established Petitioner's guilt beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 318. Rather, the relevant question was "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 319.  This standard gives full responsibility to the trier of fact to "fairly" "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.*

As indicated by the OCCA's Opinion, there was detailed testimony at trial regarding Petitioner's access to and control over the locked room and safe and regarding Petitioner's drug-selling history.  Christal Mahan testified that Petitioner and she had been living together in Apartment #1404F and that she told police the apartment had a locked room with a safe that she was not allowed to enter.  Vol. II Trial Tr. 31, 36-38. Ms. Mahan testified that she knew there was a safe in the locked room because she had been with Petitioner when the safe was purchased and that Petitioner had paid for the safe.  Vol. II Trial Tr. 36-37.  She further testified that Petitioner had gone into the locked

room and then emerged with crack cocaine "a numerous amount of times."  Vol. II Trial Tr. 38.  Ms. Mahan testified that Petitioner made her pay for the drugs he provided to her and that Petitioner told her "you just don't give it away."  Vol. II Trial Tr. 38-39.

Separately from Ms. Mahan's testimony, other testimony and the evidence retrieved from the safe and introduced at trial also supported establishment of the possession and intent-to-distribute elements of Petitioner's drug offenses.  A narcotics investigator and a police officer handling the case both testified that based upon their training and experience, the drugs and the related items showed that someone intended to sell the drugs.  *See, e.g.*, Vol. II Trial Tr. 95, 153-54.  The contents of the safe included approximately 15.66 grams of crack cocaine, 5.4 grams of cocaine base, and nearly three ounces of marijuana, bank bags bearing Petitioner's name, "tons of receipts" with Petitioner's name, cutting agent, and paraphernalia (including baggies and balloons) used to individually weigh and wrap small quantities of drugs.  Vol. II Trial Tr. 91-94, 152-58; State's Exs. 3-17.

Considering the testimony and evidence discussed above, a rational trier of fact could find beyond a reasonable doubt that Petitioner had knowingly been in possession of the cocaine and marijuana and that Petitioner had intended to distribute the marijuana. Therefore, the OCCA's rejection of Petitioner's challenge to the sufficiency of the evidence was not contrary to or an unreasonable application of the governing *Jackson* standard or based upon an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.  *See* OCCA Op. at 3, 6; 28 U.S.C. § 2254(d);

*Jackson*, 443 U.S. at 319.  Petitioner is not entitled to habeas relief on Grounds 3, 26, or 27.

### D. Grounds 4, 16, 17, 20, 21, 22, 23, 28, 32: Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel was constitutionally ineffective for numerous reasons.  Petitioner's argument in this regard is particularly vague, repetitive, and unclear; however, the undersigned has endeavored to decipher "the true nature of Petitioner's claims" and how these claims were disposed of by the state courts.  *See Barnett*, 174 F.3d at 1133.

Petitioner alleges that his trial counsel was ineffective for: (1) failing to object to government and prosecutorial misconduct in procurement of the search warrant of Apartment #1404F and to request a hearing regarding such misconduct under *Franks v. Delaware*, 438 U.S. 154 (1978); (2) failing to impeach Ms. Mahan's credibility on the stand and failing to call the notary of Ms. Mahan's signed statement as a witness; (3) failing to use evidence of utility bills showing Ms. Mahan was the account holder at Apartment #1404F; (4) failing to present evidence of another man living in Apartment #1404F; (5) failing to object to the use of Petitioner's prior drug-trafficking conviction for impeachment of Petitioner; (6) failing to request that the jury receive a self-defense instruction; (7) failing to obtain evidence that the neighbor's 911 call was not "real"; (8) failing to request a jury instruction on accomplice corroboration; and (9) failing to object to the evidence obtained from the safe.  *See* Pet. at 13-18, 36-38, 39-42, 44-46.  Petitioner additionally contends that the OCCA erred in denying him an evidentiary hearing on his

ineffective-assistance claims pursuant to Oklahoma Court of Criminal Appeals Rule 3.11.

*See* Pet. at 44; Okla. Stat. tit. 22, ch. 18 app., R. 3.11(B)(3)(b) ("OCCA Rule 3.11").

### 1. Strickland *Analysis*

Claims of ineffective assistance of counsel in violation of the Sixth Amendment are analyzed under the familiar, two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668. "First, [Petitioner] must show that counsel's performance was deficient." *See id.* at 687. To satisfy this prong, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness," or, in other words, that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *See id.* at 687-88 (internal quotation marks omitted). There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

With respect to the second prong of the analysis, Petitioner must show that *but for* counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *See id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a

showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.

*Harrington*, 562 U.S. at 111-12 (citations and internal quotation marks omitted).

    2. <u>Claims 1 Through 6</u>

        (a) Claim 1 (Grounds 4 and 20)

First, as to the alleged government misconduct in obtaining the search warrant, Petitioner here (as on direct appeal) offers only conclusory reasons to believe that any government official intentionally or recklessly offered false or materially misleading information in order to obtain the search warrant of the apartment. Petitioner specifically argues that the Midwest City police officers who came to Apartment #1404F and obtained the search warrant "presented a KNOWN lie as he testified [that Petitioner] was searched within a few minutes of forced entry being made in which it was discovered he had NO keys." Pet. at 15-17. Petitioner appears to be alleging that the police officers who responded to the 911 call, one of whom also obtained the search warrant, falsely and affirmatively represented that Petitioner had a key to the locked room in order to obtain the search warrant. The record does not support this allegation, however. On the witness stand, Officer Darrell Miller was asked if he knew whether a key to the locked door in the apartment had been found on Petitioner's person; Officer Miller responded, "Not to my knowledge." Vol. II Trial Tr. 84. Officer Seth Brown answered in the negative when asked whether he had found the key on Petitioner's person and also stated that Petitioner did not acknowledge having a key. Vol. II Trial Tr. 102, 138. On the affidavit submitted

for issuance of a search warrant, Officer Brown recited Ms. Mahan's statements to him that Petitioner "keeps the door locked at all times" and "keeps the key with him at all times" but did not state whether Petitioner's person had been searched for the key. Pet'r's App. Br. at 32-33.

In sum, even assuming Petitioner was searched at the apartment and no key was found, there is no material discrepancy between this fact and the testimony and sworn statements of the police officers. The affidavit proffered in support of a search warrant clearly distinguishes Ms. Mahan's statements regarding Petitioner's keeping of the key from Officer Brown's own statements; Ms. Mahan confirmed at trial that she had told the officers about the locked room and safe and that she did not have a key to the locked room. Vol. II Trial Tr. 36-37.

In order to obtain a *Franks* hearing as to whether the search warrant was issued upon intentionally or recklessly offered false or materially misleading information, Petitioner would have had to make a preliminary showing that, among other requirements, was "more than conclusory" and "supported by more than a mere desire to cross-examine." *See Franks*, 438 U.S. at 171 ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.") "[A]llegations of negligence or innocent mistake are insufficient." *Id.* Even if trial counsel had requested a hearing, Petitioner does not show that he would have been able to come close to making this showing. Whether Petitioner actually had the key on his person on April 18, 2009, does not significantly affect the import of Ms. Mahan's statements and other evidence demonstrating Petitioner's ownership and control over the locked room and does not at

all affect the import of her statement (also recited in the search-warrant affidavit) that there were drugs and other items in the safe to be searched. *See* Pet'r's App. Br. at 32-33; Vol. II Trial Tr. 84 (Officer Miller's testimony that the locked room was a man's bedroom full of men's products). Finally, Officer Brown's trial testimony—i.e., answering "No" when asked if the key was found on Petitioner—was not inconsistent with Petitioner's version of events of April 18, 2009. Vol. II Trial Tr. 102.

(b) Claim 2 (Grounds 4 and 32)

Petitioner argues that his trial counsel should have called Ms. Mahan as a defense witness at trial to further impeach her credibility, as well as the notary who notarized a written statement purportedly written and signed by Ms. Mahan. *See* Pet. at 18, 45-46; Pet'r's Supp. Br. at 10. At trial, the State called Ms. Mahan to testify, but when defense counsel finished cross-examination, Petitioner interjected, "I object, Your Honor. We're not done here." Vol. II Trial Tr. at 57-58. Petitioner focuses upon a screening form filled out by Ms. Mahan in which Ms. Mahan admitted to having used marijuana while pregnant, but as noted by the OCCA Ms. Mahan was thoroughly questioned about her drug use, as well as her pregnant status at the time of the 911 call, during trial. *See* Pet'r's Supp. Br. at 9; *see, e.g.*, Vol. II Trial Tr. 30, 38-39, 41, 53, 56 (Mahan denying marijuana use but admitting to crack cocaine use). The jury also heard testimony that Ms. Mahan bought cocaine from Petitioner and that Ms. Mahan's driver's license and social security card were found in the safe. Vol. II Trial Tr. 140-41, 143.

Ms. Mahan also testified regarding a typed, notarized statement bearing her signature and dated April 28, 2009. *See* Vol. II Trial Tr. 41, 53-54, 58-59, 60-61; Pet'r's

Supp. Br. at 39. Ms. Mahan testified that Petitioner actually typed up the statement for her to sign and that she did not sign it before a notary; according to Ms. Mahan, Petitioner took the signed statement and had it notarized himself, without her actually being present. Vol. II Trial Tr. 41, 58-59. Petitioner himself was permitted to testify regarding the statement and stated that he never forced Ms. Mahan to sign anything. Vol. II Trial Tr. 194. Petitioner presumably wished to have the notary testify that Ms. Mahan had properly signed the typed statement in the presence of the notary. At sentencing, Petitioner's defense counsel stated that he tried to find the notary but could not and determined that it would not be beneficial to call her. Sent'g Tr. 4. Even if the notary had appeared and so testified, however, Ms. Mahan did not deny that the signature on the statement was her own, so the authenticity of the signature was not an issue. Further, Ms. Mahan recanted the statement at trial by testifying that it falsely stated that she was on the lease for the apartment and that the police were trying to make her say Petitioner had done something and were scaring her. Vol. II Trial Tr. 59. None of Ms. Mahan's testimony regarding the inaccuracies of the typed statement would have been negated or rendered incredible by a notary's testimony that the statement had been properly notarized in Ms. Mahan's presence.

### (c) Claim 3 (Grounds 4 and 21)

Petitioner complains that his trial counsel should have introduced utility bills into evidence to show that Ms. Mahan was receiving bills for Apartment #1404F in her own name and that Petitioner was receiving bills in his name at a separate address. Pet. at 40; *see* Pet'r's Supp. Br. at 41-43. Ms. Mahan specifically testified, however, that she paid

the utilities for the apartment and did not state that her name was not on the utility bills. Vol. II Trial Tr. 54, 59.

### (d) Claim 4 (Grounds 4 and 22)

Petitioner argues that his trial counsel should have introduced evidence showing that items in the safe, and apparently the safe itself, were purchased by a different Frank Thomas (Petitioner's father) and another person (Petitioner's mother). Pet. at 40-41; *see* Pet'r's Supp. Br. at 54-56, 59-60, 62. Even if an issue could have been created as to the identity of the Frank Thomas who purchased the safe and the ownership of some items within it, that would not refute evidence, including Ms. Mahan's testimony, directly linking Petitioner to the safe; nor would it provide an explanation for other items found in the safe and associated with Petitioner specifically, including bank bags and receipts. Vol. II Trial Tr. 93-94, 120, 123-24; *see also* Vol. II Trial Tr. 37 (Ms. Mahan testifying that she was with Petitioner when he bought and paid for it). Further, the fact that another individual might have access to the drugs in the safe would not by itself negate a finding that Petitioner had possession over the drugs; under Oklahoma law, possession "need not be exclusive as long as there is proof that the defendant knowingly and willfully shared the right to control the dangerous substance." *See White v. State*, 900 P.2d 982, 986 (Okla. Crim. App. 1995) (internal quotation marks omitted).

### (e) Claim 5 (Ground 4)

Petitioner argues that his trial counsel should have objected to admission of evidence of Petitioner's prior drug trafficking conviction for impeachment purposes. Pet. at 40-41; *see* Vol. II Trial Tr. 205; State's Ex. 18; Court's Ex. 2. Pursuant to Oklahoma

Statute Title 12, Section 2609(B), evidence of a prior felony conviction is generally not admissible if more than ten years has elapsed "since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is later." The judgment and sentence in Petitioner's prior criminal case was issued on August 20, 1997. State's Ex. 18. Petitioner was sentenced to ten years' imprisonment with all but the first five years suspended. State's Ex. 18. In November 2005, the suspended portion of Petitioner's sentence was revoked in part, and Petitioner was committed to ODOC custody. *See* Court's Ex. 2 (docket sheet for *State v. Thomas*, No. CF-1996-1282 (Okla. Cnty. Dist. Ct. filed Feb. 28, 1996)). Publicly available records from ODOC reflect that Petitioner was released from incarceration in Case Number CF-1996-1282 in 2006 and his sentence in that case ended in 2007, i.e., within 10 years of Petitioner's 2010 criminal trial in the instant matter, and Petitioner presents no argument or evidence to the contrary.

(f) Claim 6 (Ground 4)

Petitioner claims that his trial counsel should have requested a jury instruction on the defense of self-defense to the Domestic Abuse charge. Pet. at 17-18. To have been entitled to a self-defense instruction, sufficient evidence must have been introduced to raise self-defense as an issue. *See* Okla. Unif. Crim. Jury Instruction Nos. 8-45, 8-49. "If the defendant fails to come forward with evidence, or fails to come forward with sufficient evidence, the issue of self-defense is not raised in the trial, and the judge should not instruct on self-defense." *Id.* at No. 8-49 committee's comment. Ms. Mahan testified that after she got to Apartment #1404F on the night in question, Petitioner followed her

through the apartment, "poking [her] on the arm" while she "was screaming and crying" and trying to get away from him. Vol. II Trial Tr. 30, 32-33. Ms. Mahan stated that Petitioner held her down on the bed by her wrist telling her to be quiet and that Petitioner pushed her down on to the bed and prevented her from getting up. Vol. II Trial Tr. 32-34. Petitioner himself testified that while they were arguing, Ms. Mahan was "throwing her hands around like she might hit" Petitioner, so Petitioner "grabbed" Ms. Mahan's wrists, and when Ms. Mahan "fell back" on the bed Petitioner "fell on top of her." Vol. II Trial Tr. 199-200. None of the testimony or the evidence at trial reasonably supported an argument that Petitioner's use of force against Ms. Mahan was not unlawful because Petitioner himself was "about to be injured" himself. *See* Okla. Stat. tit. 21, § 643(3); Okla. Unif. Crim. Jury Instruction No. 8-48 (instructing that the use of force in self-defense is justified if the person "reasonably believed that use of force" was required to protect himself from "imminent danger of bodily harm"); *Kinsey v. State*, 798 P.2d 630, 632-33 (Okla. Crim. App. 1990) ("[I]t is not error to refuse to give an instruction on the defendant's theory of defense if there is insufficient evidence to support it.").

3. Analysis of Claims 1 Through 6

Petitioner raised the first six of these claims on direct appeal through his Supplemental Brief. *See* Pet'r's Supp. Br. at 7-10. Petitioner also submitted various items of nonrecord evidence in support of his claims along with his Supplemental Brief. Pet'r's Supp. Br. at 17-62. The OCCA rejected the claims on the merits:

> Appellant submits a long list of reasons why he was denied the effective assistance of counsel. Most of these claims (which are not supported by coherent argument or citation to relevant authority) focus on the credibility

of the State's primary witness, Crystal Mahan. Yet Mahan's credibility, character, and potential bias against Appellant (*e.g.*, Mahan's admitted drug use, prior inconsistent statements, and possible desire to exact revenge for Appellant's abusive and controlling nature) were thoroughly explored at trial. Appellant has attached a number of documents to his *pro se* brief which were not a part of the trial record. We construe these materials as part of a request for evidentiary hearing on trial counsel's effectiveness. *See* Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, 22 O.S., Ch. 18, App. (2011). Having reviewed them in conjunction with Appellant's *pro se* brief, and in light of the evidence presented at trial, we find no strong possibility that trial counsel performed deficiently, and therefore no need for an evidentiary hearing. *Simpson v. State*, 2010 OK CR 6, ¶ 53, 230 P.3d 888, 905-06. This proposition is denied.

Appellant's claim that trial counsel was ineffective for failing to request a hearing pursuant to *Franks v. Delaware*, [438 U.S. 154 (1978)], is meritless. Such a hearing is aimed at government misconduct, and Appellant offers no reason to believe that police intentionally or recklessly offered false or materially misleading information to the magistrate. Appellant's claim that his prior Drug Trafficking conviction was too old to be usable for impeachment is likewise meritless, as less than ten years had passed since Appellant's release from custody on that sentence. 12 O.S.2001, § 2609(B). Appellant's claim that counsel should have requested instructions on the defense of self-defense or defense of another for Count 3 (Domestic Abuse) is meritless because there was no testimony presented to support same. *Kinsey v. State*, 1990 OK CR 64, ¶ 8, 798 P.2d 630, 632-33.

OCCA Op. at 5 & n.1.

Although the OCCA did not expressly mention the application of the *Strickland* standard to Petitioner's claims, the state court was not required to refer to the controlling Supreme Court case "so long as neither the reasoning nor the result of the state-court decision contradict[ed]" that case. *Matthews*, 577 F.3d at 1183 n.2 (internal quotation marks omitted). Further, the OCCA's citation to *Simpson v. State* incorporated that case's *Strickland* analysis. *See Simpson*, 230 P.3d at 906("[W]hen we review and deny a request for an evidentiary hearing on a claim of ineffective assistance under the standard

set forth in Rule 3.11, we necessarily make the adjudication that Appellant has not shown defense counsel to be ineffective under the more rigorous federal standard set forth in *Strickland*."); *see also Wilson v. Trammell*, 706 F.3d 1286, 1311-12 (10th Cir. 2013) (Gorsuch, J., concurring).

Applying the law to the facts of Petitioner's case (both as outlined above), Petitioner was not prejudiced by his trial counsel's actions with respect to any of the issues raised. The record and Petitioner's arguments, considered together with the totality of the evidence before the jury, do not support a conclusion that *but for* his trial counsel's alleged errors, there is a reasonable probability that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Nor has Petitioner shown that the OCCA's denial of an evidentiary hearing under OCCA Rule 3.11 warrants habeas relief. The OCCA's Rule 3.11 ruling "operates as an adjudication on the merits of the *Strickland* claim and is therefore entitled to deference under § 2254(d)(1)." *Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013); *Wilson*, 706 F.3d at 1312 (Gorsuch, J., concurring). Because the filings offered in Petitioner's Supplemental Brief and its exhibits, as discussed in detail above, did not establish "by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to [use] or identify the complained-of evidence," an evidentiary hearing was not warranted under Rule 3.11. OCCA R. 3.11; Pet'r's Supp. Br.[5] And because Petitioner has failed to demonstrate that

---

[5] Alternatively, assuming Petitioner's claims are entitled to de novo review, Petitioner has not shown that his trial counsel's performance was prejudicial or that the OCCA erred in denying him an evidentiary hearing. There is no "substantial" likelihood of a different result, for the same reasons outlined above. *See Harrington*, 562 U.S. at 112; *cf.*

he was prejudiced by his trial counsel's performance, the undersigned need not address whether counsel's performance was deficient with regard to his suppression efforts. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. For the reasons outlined above, the OCCA's determination of ineffective-assistance claims 1-6 (Grounds 4, 20, 21, 22, 28, 32) was neither contrary to nor an unreasonable application of *Strickland*'s governing standard, and it was not based on an unreasonable determination of the facts in light of the evidence before it. *See Strickland*, 466 U.S. at 687-95; 28 U.S.C. § 2254(d); OCCA Op. at 4-5 & n.1.

### 4. Claims 7 through 9

Petitioner raised his final three ineffective-assistance claims for the first time in his Application for Postconviction Relief. *See* Pet'r's Postconviction App. at 52-28, 73-77 (Propositions VI, VII, XIII). The trial court denied relief, noting that issues that "could have been raised in a timely direct appeal, but were not, are waived." Doc. No. 13-6 at 6. On postconviction appeal, the OCCA did not reach the merits of these three arguments,

---

*Malicoat v. Mullin*, 426 F.3d 1241, 1248 (10th Cir. 2005) (applying de novo review where OCCA had applied a standard that did not comport with Strickland). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington*, 562 U.S. at 105.

stating that to the extent Petitioner failed to present his ineffective assistance of trial counsel claims on direct appeal, "those claims are waived and barred from further consideration." *See* OCCA Postconviction Op. at 5.

These three claims are procedurally barred from review by this Court. A federal habeas claim may be barred by a petitioner's procedural default in state court "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "[T]he [independent and adequate state ground] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-30.

The OCCA's dismissal of these claims on postconviction appeal was based on both an independent and an adequate state procedural ground. The OCCA's imposition of a procedural bar was an "independent" state ground because it was "separate and distinct from federal law" and "the exclusive basis for the state court's holding." *See Maes*, 46 F.3d at 985; OCCA Postconviction Order at 5.[6] "A state court finding of procedural default is adequate if it is strictly or regularly followed." *Maes*, 46 F.3d at 986 (internal quotation marks omitted). The Tenth Circuit has recognized that

---

[6] Title 22, Section 1086 of the Oklahoma Statutes provides:

> All grounds for relief available to an applicant under [the Uniform Post-Conviction Procedure Act] must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the prior application.

Oklahoma's bar on raising claims for postconviction relief that could have been raised on direct appeal is an independent and adequate state bar. *See Smith v. Workman*, 550 F.3d 1258, 1267 (10th Cir. 2008); *Hale v. Gibson*, 227 F.3d 1298, 1330 (10th Cir. 2000). As a result, federal habeas corpus review of Petitioner's ineffective-assistance claims 7, 8, and 9 is precluded absent a showing by Petitioner of either: (1) cause for the default and actual prejudice, or (2) that a fundamental miscarriage of justice will result if Petitioner's claims are not considered. *See Coleman*, 501 U.S. at 750; *Hale*, 227 F.3d at 1330-31.

"Cause" under the cause-and-prejudice analysis "must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 752. As he did on postconviction appeal, Petitioner argues ineffective assistance of appellate counsel as cause for his failure to raise ineffective-assistance claims 7-9 on direct appeal. *See* Pet. at 36, 37, 42. Attorney error amounting to constitutionally ineffective assistance of counsel under the Sixth Amendment may constitute cause as would be required to excuse a procedural default. *Coleman*, 501 U.S. at 753-54. Accordingly, the undersigned undertakes review of the merits of Petitioner's underlying claims in the context of his ineffective assistance of counsel claims. *See Smith*, 550 F.3d at 1267. "Because the same legal standards govern petitioner's underlying claim of ineffective assistance of counsel and his closely related burden to show cause for his state law procedural default, [the Court] must determine whether petitioner has shown cause concurrently with the merits of his ineffective assistance of counsel claim." *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998).

(a) Claim 7 (Ground 16)

Petitioner asserts that his trial counsel erred by "fail[ing] to obtain &/or use proof of a 911 call if real to show additional lies told by police officers &/or prosecutors & to provide there was <u>never</u> any report <u>or</u> evidence of an alleged violent domestic." Pet. at 36-37. Petitioner offers no alternative explanation for police officers being dispatched to Apartment #1404F at 2:40 a.m., and the record does not reasonably support the proposition that the neighbor's 911 call was a fabricated incident. Ms. Mahan testified that she had been "screaming and crying," that there had been a physical altercation between Petitioner and her, and that she was still screaming when the police were at the door. Vol. II Trial Tr. 33-35. Officer Miller testified that they were dispatched that night for a "domestic disturbance" when a "neighbor" called in regarding "a female screaming for help," and he stated that when he arrived at Apartment #1404F he could hear a female "in distress" from outside the apartment door. Vol. II Trial Tr. 76-77, 98. Officer Miller also testified that the neighbor wanted to remain anonymous but lived in Apartment E, "just to the left of" Petitioner and Ms. Mahan's apartment, and that the police knocked on her door. Vol. II Trial Tr. 98. Petitioner's vague implication that the absence of a 911 call would cast aspersions on the credibility of the State or the police is insufficient to show that such evidence would be "reasonably likely" to have any effect on the outcome of his criminal trial and thus fails to show that he suffered any prejudice from his trial counsel's alleged failure to seek such evidence. *See Harrington*, 562 U.S. at 111-12. Because Petitioner has failed to demonstrate that he was prejudiced by his trial counsel's

performance insofar as the 911 call issue, the undersigned need not address whether counsel's performance was deficient in that regard. *See Strickland*, 466 U.S. at 697.

(b) Claim 8 (Ground 17)

Petitioner claims that his trial counsel should have requested a jury instruction on the need for corroboration of Ms. Mahan's "accomplice" testimony. Pet. at 37-38; *see supra* Part III.B.1; *Pink*, 104 P.3d at 590; Okla. Stat. tit. 22, § 742 ("A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense . . . ."). Under Oklahoma law, "the test used to determine whether a witness is an accomplice is whether he or she could be indicted for the offense for which the accused is being tried." *Matthews v. State*, 953 P.2d 336, 343 (Okla. Crim. App. 1998) (alteration and internal quotation marks omitted). The evidence did not indicate that Ms. Mahan could be charged with Petitioner's drug-related crimes, however, because she lacked "possession" over the drugs—Ms. Mahan lacked a key to the locked room, was not allowed to enter the locked room, and had to purchase drugs kept in the safe from Petitioner. *See* Vol. II Trial Tr. 37-39, 53, 57. And, even assuming that the jury could have found Ms. Mahan to be an accomplice, the record reflects that Ms. Mahan's testimony was corroborated by significant other evidence linking Petitioner to those crimes, as specifically described above in Part III.B.1. *See* Okla. Unif. Crim. Jury Instruction Nos. 9-26, 9-29; *Matthews*, 953 P.2d at 343; *cf.* OCCA Op. at 3 ("The items found in the room, and in the safe, corroborated Mahan's claim that Appellant had exclusive access to that area of the apartment."). Petitioner has failed to show that it is "reasonably likely" that such a jury

instruction would have been given, even if requested, or that there is any "substantial" likelihood of a different result if the jury had been so instructed. *See Harrington*, 562 U.S. at 111-12. Because Petitioner has failed to demonstrate that he was prejudiced by his trial counsel's performance, the undersigned need not address whether counsel's performance was deficient with regard to this issue. *See Strickland*, 466 U.S. at 697; *Dennis v. Poppel*, 222 F.3d 1245, 1250 (10th Cir. 2000) ("If the [underlying or constitutional] claims lack merit, [the petitioner] cannot claim prejudice from his attorney's failure to raise them at trial or on direct state appeal.").

(c) Claim 9 (Ground 23)

Finally, Petitioner contends that his trial counsel erred in failing to object to admission of the contents of the safe and of photographs of the safe at trial. Petitioner appears to argue that his trial counsel should have objected at trial even though the trial court had denied Petitioner's request to suppress this same evidence. Pet. at 42. As an initial matter, Petitioner's trial counsel *did* object to the admission of certain of these items of evidence, partially negating Petitioner's premise on this claim. *See* Vol. II Trial Tr. at 121 (Petitioner's counsel objecting to admission of *The Black Chronicle* found in safe), 125-26 (Petitioner's counsel objecting to admission of bank bag found in safe).

Further, the record reflects that such objection would have been fruitless—both because the trial court had already rejected Petitioner's arguments in denying the motions to suppress and because the evidence was properly admissible under the Fourth Amendment and state law. As found by the OCCA and explained in detail above (Part III.D.2.a), the search warrant was issued based upon an affidavit containing information

supplied by Petitioner's own girlfriend. "Given the undisputed relationship between [Petitioner] and Mahan, and her personal knowledge of the premises in which she lived, the magistrate had a substantial basis for finding probable cause to believe that evidence of illegal drug activity could be found" in the locked room. OCCA Op. at 2-3; *see* Pet'r's App. Br. at 32-33 (Affidavit for Search Warrant); *Gates*, 462 U.S. at 238 (holding that a magistrate tasked with issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place"). The record also reflects that the officers' initial entry into the apartment was justified by exigent circumstances—i.e., dispatch pursuant to the neighbor's 911 call of a domestic dispute, Ms. Mahan's "screaming and crying," and Petitioner's refusal to open the door upon the officers' request. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."). "[C]ounsel's performance is not deficient as long as it falls within the wide range of reasonable professional assistance and might be considered sound trial strategy." *Parker v. Scott*, 394 F.3d 1302, 1321 (10th Cir. 2005) (internal quotation marks omitted). Because the evidence was properly admissible, Petitioner's counsel behaved reasonably and was not ineffective in failing to object to the admission of some items. *See id.* at 1321-22.

(d) Conclusion: Ineffective Assistance of Trial Counsel Claims 7-9

As outlined above, Petitioner cannot show that his trial counsel's performance was deficient or that but for trial counsel's errors, there is a "reasonable probability" of a different outcome. *Harrington*, 562 U.S. at 104, 111-12. It follows that appellate counsel's performance was not deficient or prejudicial in failing to raise these meritless ineffective-assistance claims on direct appeal. *See Dennis*, 222 F.3d at 1250. "[T]he Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal." *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995). Petitioner therefore has not shown that ineffective assistance of his appellate counsel constitutes cause for his failure to raise his ineffective assistance of trial counsel claims on direct appeal. Absent a showing of cause, there is no need for the Court to consider the existence of actual prejudice. *See Steele v. Young*, 11 F.3d 1518, 1522 n.7 (10th Cir. 1993).

As Petitioner cannot show cause and prejudice to excuse his procedural default, he must show that a fundamental miscarriage of justice will result absent consideration of his claims. *See Coleman*, 501 U.S. at 750; *Steele*, 11 F.3d at 1522. The fundamental miscarriage of justice exception is "extremely narrow," "implicated only in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993) (internal quotation marks omitted). To prevail, Petitioner must identify evidence that "affirmatively demonstrate[s] his innocence." *See id.*; *Steele*, 11 F.3d at 1522 (noting that a petitioner must supplement his constitutional claim with "a colorable showing of factual innocence"). As addressed below in Part III.J.4, Petitioner identifies no such evidence and cannot prevail on his actual-innocence claim; the fundamental

miscarriage of justice exception is therefore inapplicable.  Accordingly, Petitioner's state-court procedural default of ineffective assistance of trial counsel claims 7-9 (Grounds 16, 17, 23) precludes habeas review thereof, and Petitioner is not entitled to federal habeas relief on these claims.

### E.  Ground 6: Violation of *Brady v. Maryland*

In Ground 6, Petitioner argues that the State violated *Brady v. Maryland* by failing to disclose a checkbook and other unspecified evidence, presumably found inside the safe, that "belong[ed] to another male &/or others" and would "destroy[] the State[']s theory."  Pet. at 21-23; *see Brady*, 373 U.S. 83.  On direct appeal, Proposition III of Petitioner's Supplemental Brief contained some scattered references to suppression and denial of evidence but was chiefly focused upon alleged deficiencies in the evidence and testimony that had been presented by the State at trial.  *See* Pet'r's Supp. Br. at 14-16.  Accordingly, the OCCA denied relief on the merits of Petitioner's challenge to the sufficiency of the evidence and additionally stated in its discussion of Petitioner's Proposition III:

> This Court will not simply presume the truth of Appellant's factual claims and then fill in the legal analysis for him.  *Skinner v. State*, 2009 OK CR 19, ¶ 33, 210 P.3d 840, 852; *James v. State*, 2009 OK CR 8, ¶ 11 n.10, 204 P.3d 793, 798 n.10.

OCCA Op. at 6.  In his Postconviction Application, Petitioner similarly scattered references to *Brady* among multipage string cites in Propositions I, V, XXIV, but did not squarely raise any *Brady* argument as a separate proposition of error.  *See* Pet'r's Postconviction App. at 17, 48, 109.  In denying relief, the trial court did not list a *Brady*

argument among those raised by Petitioner and further noted that issues that could have been raised on direct appeal but were not are waived. Doc. No. 13-6 at 6. The OCCA affirmed and included the claims containing *Brady* references with those that had been previously addressed by the appellate court on direct appeal and were now barred. OCCA Postconviction Order at 5.

Relevant to the lens to be applied on habeas review, and liberally construed, Petitioner argues that the OCCA misapprehended his sufficiently raised *Brady* claim. Pet. at 23. Respondent argues that the OCCA's disposition on direct appeal is a holding that Petitioner waived his *Brady* argument. *See* Resp't's Resp. at 37-38. The undersigned disagrees with Petitioner and agrees with Respondent. In the case cited by the OCCA, *Skinner v. State*, that court had addressed a highly similar briefing deficiency and expressly found waiver of the *Brady* argument:

> In Proposition II, Skinner asserts that he is entitled to a new trial due to the discovery of new evidence that had not been previously disclosed. The argument in Skinner's brief, however, merely gestures at a true *Brady* claim and a "newly discovered evidence" claim, without coming close to fully developing either. This Court concludes, accordingly, that Skinner's Proposition II claim has been waived.

*Skinner*, 210 P.3d at 852 (footnotes omitted) (citing OCCA R. 3.5, 3.11(B)). And in the cited portion of *James*, the OCCA stated: "Appellant also makes a cursory complaint of prosecutor misconduct in Proposition 2. Because he fails to explain the legal basis for this complaint, we will not consider it." *James*, 204 P.3d at 798 n.10 (citing OCCA R. 3.5(A)(5)). Here, the OCCA's disposition is most reasonably understood to be a finding of waiver based upon Petitioner's insufficient treatment of the *Brady* argument in his

appellate briefing, just as in *Skinner* and *James*.[7]  *See, e.g.*, *Cole v. Trammell*, 755 F.3d 1142, 1176 (10th Cir. 2014).

In *Cole*, which likewise involved habeas review of an issue that the OCCA had found to be "not properly raised" under OCCA Rule 3.5(A)(5), the Tenth Circuit held that "the issue is unexhausted and, in turn, procedurally barred for purposes of federal habeas review." *See id.*  The Court is precluded from considering a habeas claim based on an unexhausted ground:

> [A] state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition.  A claim has been exhausted when it has been "fairly presented" to the state court.  "Fair presentation" means that the substance of the claim must be raised in state court.  The allegations and supporting evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.  Thus, although a habeas petitioner will be allowed to present "bits of evidence" to a federal court that were not presented to the state court that first considered his claim, evidence that places the claims in a significantly different legal posture must first be presented to the state courts.  These provisions of AEDPA are designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.

---

[7]  OCCA's Rule 3.5(A)(5), cited in *James*, states:

> The brief of the appellant shall be in substantial compliance with the form and organization as follows:

> (5) An argument, containing the contentions of the appellant, which sets forth all assignments of error, supported by citations to the authorities, statutes and parts of the record.  Each proposition of error shall be set out separately in the brief.  Merely mentioning a possible issue in an argument or citation to authority does not constitute the raising of a proposition of error on appeal.  **Failure to list an issue pursuant to these requirements constitutes waiver of alleged error**.  *See Armstrong v. State*, 1991 OK CR 34, 811 P.2d 593, 599.

OCCA R. 3.5(A)(5) (emphasis added).

*Wilson v. Workman*, 577 F.3d 1284, 1294-95 (10th Cir. 2009) (citations and internal quotation marks omitted), *overruled on other grounds as recognized in Lott*, 705 F.3d at 1212-13.

Very generally speaking, a habeas petitioner raising an unexhausted claim may return to the state courts and present the claim for disposition. *See, e.g.*, *Anderson v. Sirmons*, 476 F.3d 1131, 1134-35 (10th Cir. 2007). If Petitioner were to seek postconviction relief from the state courts on his *Brady* claim now, however, his claim would be procedurally barred under Oklahoma law. *See* Okla. Stat. tit. 22, § 1086 (prescribing that any ground for relief that is "[f]inally adjudicated," not raised in the original postconviction application, or "knowingly, voluntarily and intelligently waived" in "any . . . proceeding the applicant has taken to secure relief" may not be the basis for a subsequent postconviction application absent a finding of sufficient reason by the court); *Jones v. State*, 704 P.2d 1138, 1140 (Okla. Crim. App. 1985) ("In short, if an issue is bypassed on direct appeal, it may not be reasserted on application for post-conviction relief." (citing Okla. Stat. tit. 22, § 1086)). Moreover, the OCCA has specifically barred this Petitioner from seeking further collateral relief of his criminal conviction: "Subsequent application attempting to collaterally appeal Petitioner's conviction is **BARRED**." OCCA Postconviction Order at 7 (citing OCCA R. 5.5).

Respondent argues that Petitioner's unexhausted *Brady* claim is subject to "anticipatory procedural bar"—i.e., when the Court "appl[ies] procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *See* Resp't's Resp. at 39; *Moore v. Schoeman*, 288

F.3d 1231, 1233 n.3 (10th Cir. 2002); *see, e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1240 (10th Cir. 2002); *Steele*, 11 F.3d at 1524. The undersigned agrees. Because Petitioner did not exhaust his state remedies with respect to his *Brady* claim, and "the court to which the petitioner would be required to present his claim[] in order to meet the exhaustion requirement would now find the claim[] procedurally barred," the result is "a procedural default for purposes of federal habeas." *See Coleman*, 501 U.S. at 735 n.1.

The anticipated finding by the OCCA that Petitioner's *Brady* claim is barred under § 1086 would be both an "independent" and "adequate" ground because such finding would be "separate and distinct from federal law," "the exclusive basis for the state court's holding," and "strictly or regularly followed." *See Maes*, 46 F.3d at 985; *Smith*, 550 F.3d at 1267; *Hale*, 227 F.3d at 1330. As a result, federal habeas corpus review of Ground 6 is precluded absent a showing by Petitioner of either: (1) cause for the default and actual prejudice, or (2) that a fundamental miscarriage of justice will result if Petitioner's claim is not considered. *See Coleman*, 501 U.S. at 750; *Hale*, 227 F.3d at 1330.

"Cause" under the cause-and-prejudice analysis "must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 752. Petitioner nominally argues ineffective assistance of appellate counsel as cause for his failure to properly raise his *Brady* claim on direct appeal. *See* Pet. at 22. Attorney error amounting to constitutionally ineffective assistance of counsel under the Sixth Amendment may constitute cause as would be required to excuse a procedural default. *Coleman*, 501 U.S. at 753-54. However, "before [P]etitioner can use ineffective

assistance of . . . *appellate* counsel to establish cause for his procedural default, he must first present this argument as an independent claim to the state court." *Gonzales v. Hartley*, 396 F. App'x 506, 508-09 (10th Cir. 2010) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)); *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that an ineffective assistance claim "asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). As noted above, Petitioner failed to properly raise his underlying *Brady* argument in his postconviction application, and that failure was accompanied by a corresponding failure to raise the ineffective-assistance-of-appellate counsel argument associated with the *Brady* claim for postconviction consideration. In other words, Petitioner has not presented his ineffective assistance of appellate counsel claim regarding his *Brady* argument to the state courts for disposition and, therefore, cannot rely upon the purportedly ineffective appellate assistance to excuse his failure to raise his *Brady* claim on direct appeal. And, Petitioner cannot invoke ineffective counsel as cause for this latter default, because he represented himself on postconviction, and there is no Sixth Amendment right to counsel in postconviction proceedings. *See Gonzales*, 396 F. App'x at 508. Petitioner fails to show or even allege cause for failing to raise this ineffective appellate assistance claim on postconviction review. Absent a showing of cause, there is no need for the Court to consider the existence of actual prejudice. *See Steele*, 11 F.3d at 1522 n.7.

Even assuming that Petitioner could rely upon ineffective assistance of appellate counsel as cause for his default of his *Brady* claim, Petitioner's *Brady* claim is meritless, and appellate counsel's performance therefore was not prejudicial in failing to raise this

meritless claim on direct appeal. *See Dennis*, 222 F.3d at 1250; *cf. Cole*, 755 F.3d at 1176 n.13 (alternatively addressing waived issue de novo and concluding issue is meritless). Under *Brady*, the prosecution violates a defendant's due process rights when it fails to disclose evidence favorable to the defendant that was material either to guilt or punishment. *See Brady*, 373 U.S. at 87. Therefore, to establish a *Brady* violation, Petitioner must show that: "(1) the prosecutor suppressed evidence; (2) the evidence was favorable to the defendant as exculpatory or impeachment evidence; and (3) the evidence was material." *Knighton v. Mullin*, 293 F.3d 1165, 1172 (10th Cir. 2002) (internal quotation marks omitted). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Moore v. Gibson*, 195 F.3d 1152, 1165 (10th Cir. 1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

The evidence Petitioner believes was withheld not does fulfill any of these criteria. First, there is nothing beyond Petitioner's allegation to establish that the State had evidence that Ms. Mahan was the only individual on the lease for Apartment #1404F and, even if true, evidence to that effect would not negate the large quantity of evidence showing Petitioner's dominion and control over the locked room in that apartment. *See, e.g.*, Vol. II Trial Tr. 37 (Ms. Mahan testifying that the room was always locked and that

47

she did not have a key), 84 (Officer Miller testifying that the locked room was a man's bedroom and that Ms. Mahan stated she was "not allowed in there"), 136 (Officer Brown testifying that the safe appeared to belong to Petitioner and the locked room contained men's items); *cf.* Vol. II Trial Tr. 52, 59 (Ms. Mahan testifying that she is not on the lease of the apartment); Preliminary Hr'g Tr. 14 (Officer Brown testifying that he had not seen the lease for the apartment and did not know whose names were on it). There was no dispute as to whether Ms. Mahan lived in the apartment. *See* Vol. II Trial Tr. 31. Second, the record reflects that at least some of the items Petitioner alleges were withheld were in fact disclosed to Petitioner's counsel. *See* Vol. I Trial Tr. 2 (Petitioner's counsel stating that the State had turned over all the discovery it was aware of and that Petitioner's discovery motions were moot); Vol. II Trial Tr. 140-43 (Petitioner's counsel questioning Officer Brown regarding copies of Ms. Mahan's personal documents that were found inside the safe and seeking to have them admitted into evidence). Petitioner's incoherent references to various individuals' "lying" at trial do not reasonably establish that the State was in possession of undisclosed evidence. Moreover, Petitioner's bare, conclusory allegations do not support the proposition that any of the evidence he disputes (e.g., another man's checkbook; Ms. Mahan's personal documents) would have been exculpatory or otherwise favorable to Petitioner, as such evidence would not undermine the other evidence and testimony (discussed in Part III.C) establishing the elements of the relevant crimes—including possession and intent to distribute—such that a rational juror could have found beyond a reasonable doubt that Petitioner committed the charged offenses. *See* Pet. at 21-23.

As Petitioner cannot show cause and prejudice to excuse the procedural default, he must show that a fundamental miscarriage of justice will result absent consideration of his claims. *See Coleman*, 501 U.S. at 750; *Steele*, 11 F.3d at 1522. As addressed below in Part III.J.4, Petitioner identifies no evidence "affirmatively demonstrat[ing] his innocence" and cannot prevail on his actual-innocence claim, and the record does not support such a claim; the fundamental miscarriage of justice exception is therefore inapplicable. *See Ballinger*, 3 F.3d at 1375; *Steele*, 11 F.3d at 1522.

Accordingly, habeas review of Petitioner's Ground 6 is precluded by his waiver before the OCCA and by anticipatory procedural default. Petitioner is not entitled to federal habeas relief on his *Brady* claim.

## F. Ground 7: Cumulative Error

In Ground 7, Petitioner argues that the accumulation of trial errors deprived him of a fundamentally fair trial. Pet. at 24-25. After Petitioner's counsel raised this claim on direct appeal, the OCCA denied it on the merits, holding: "[B]ecause we have found no error in the preceding propositions, there can be no error by accumulation." OCCA Op. at 4.

"In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (internal quotation marks omitted). As that language implies, "[c]umulative error analysis applies where there are

two or more actual errors; it does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998). Under such review a federal court also considers the impact of any constitutional claims that "have been individually denied for insufficient prejudice." *See Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003) (holding that because claims involving "substantive prejudice components essentially duplicate the function of harmless-error review," "such claims should be included in the cumulative-error calculus if they have been individually denied for insufficient prejudice").

The Tenth Circuit has recognized that a circuit split exists regarding whether the requirement to conduct a cumulative-error analysis is clearly established federal law under 28 U.S.C. § 2254(d)(1). *See Cole*, 755 F.3d at 1177 n.14. However, the Tenth Circuit also notes that its precedent "may very well signal where our court has come down on the issue—*viz.*, that cumulative-error analysis is clearly established law." *See id.* (internal quotation marks omitted).

Having considered *Cole*'s forecast, the undersigned concludes that that the OCCA's decision on Petitioner's cumulative-error claim was not unreasonable or contrary to such clearly established federal law. As outlined in the remainder of this report, and even considering those arguments that were not before the OCCA on direct appeal as Petitioner urges (Pet. at 24), no actual, *constitutional* errors were present in the state-court proceedings, including with respect to Petitioner's claims where it is recommended that relief be denied based upon an insufficient showing of prejudice, such as certain of Petitioner's claims of ineffective assistance of counsel. Lacking two or

more errors to accumulate, Petitioner cannot show a violation of fundamental fairness. *See Littlejohn*, 704 F.3d at 868; *Moore*, 153 F.3d at 1113. Relief on this basis should be denied.

### G. Ground 8: Denial of Due Process and Equal Protection

In Ground 8, Petitioner sets forth a disjointed list of perceived errors committed by the trial court and the OCCA in conducting the criminal trial and in adjudicating his direct appeal and postconviction application. Petitioner collectively categorizes these alleged errors as a violation of his due process and equal protection rights due to the state courts' "Failing to uphold Petitioner[']s Statutory &/or Federal Rights Depriving Him Of Fair Proceedings by Ignoring The Merits of Petitioner[']s claims." Pet. at 25-31.

The few facts contained in this ground for relief are duplicative of Petitioner's numerous other grounds for habeas relief and primarily consist of allegations of the state courts' violations of Oklahoma law, allegations that Oklahoma's law is contrary to federal law, and that the state courts generally should not have rejected his arguments. Petitioner did not raise this claim in the state courts, but his failure to exhaust is of no moment: such conclusory, unsupported allegations do not state a cognizable claim for habeas relief. *See Estelle*, 502 U.S. at 68 (holding that a federal court is limited on habeas review to deciding whether a conviction violated the Constitution or federal law); *Steele*, 11 F.3d at 1524 ("Even if it was not barred, [the petitioner's] claim challenging the Oklahoma post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding."); *Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) (finding naked allegations of ineffective

assistance of counsel not cognizable under 28 U.S.C. § 2254); *cf. Hall*, 935 F.2d at 1110

("[C]onclusory allegations without supporting factual averments are insufficient to state a

claim on which relief can be based."). Nor do such allegations state any kind of plausible

claim for violation of Petitioner's federal civil rights. *See Richards v. Bellmon*, 941 F.2d

1015, 1018-19 & n.3 (10th Cir. 1991). Petitioner is not entitled to relief on Ground 8.

## H. Grounds 9 and 10: Alleged Errors Regarding Application for Postconviction Relief

In Ground 9, Petitioner asserts that the trial court was "acting in concert" with the

State by "[r]ubber-[s]tamp[ing]" the order denying postconviction relief and failing to be

neutral, resulting in a deprivation of due process to Petitioner. Pet. at 31-32. In Ground

10, Petitioner similarly argues that the trial court violated an OCCA Rule and Oklahoma

law by determining his Postconviction Application without specifically considering each

of Petitioner's 25 assignments of error or, alternatively, that the trial court did consider

Petitioner's 25 assignments of error and conceded Petitioner's "facts & arguments &

authority(s)" are true but improperly failed to grant relief. Pet. at 32-33.

Petitioner raised Grounds 9 and 10 to the OCCA on postconviction appeal. In

affirming the denial of relief, the OCCA specifically noted that these arguments

concerned only postconviction proceedings (i.e., they could not have been raised on

direct appeal) and were thus distinct from the bulk of Petitioner's claims. OCCA

Postconviction Order at 5; Pet'r's Postconviction App. Br. (Doc. No. 13-7) at 2-11. The

most reasonable understanding of the OCCA's disposition is that the OCCA denied these

postconviction-related claims on the merits, although the appellate court did not further

discuss its basis for denial.  OCCA Postconviction Order at 5; *see Harrington*, 562 U.S. at 99-100 ("[Section] 2254 does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"); *Gipson*, 376 F.3d at 1196 (deferring to a decision of the OCCA as an adjudication on the merits although the reasoning therefor was not expressly stated).

The Tenth Circuit has rejected a similarly unfocused attack on state postconviction proceedings:

> We can also summarily dispose of Mr. Jackson's claim that his state postconviction proceedings were "violative of the basic due process clause of the federal constitution and the decisions therefrom are clearly contrary to the Supreme Court precedent."  Habeas relief under § 2254 is granted only for errors in the state judgment forming the basis for incarceration.  If that judgment was proper, there is no ground for habeas relief based on flaws in state postconviction proceedings.  Thus, claims such as Mr. Jackson's fail to state a federal constitutional claim cognizable in a federal habeas proceeding.

*Jackson v. Ray*, 292 F. App'x 737, 740 (10th Cir. 2008) (citation and internal quotation marks omitted) (citing *Steele*, 11 F.3d at 1524).  "[B]ecause the constitutional error [Petitioner] raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim."  *See Sellers v.* Ward, 135 F.3d 1333, 1339 (10th Cir. 1998).  Even liberally construed, Petitioner fails to present a cognizable claim for habeas relief or to show that the OCCA's decision was unreasonable or contrary to federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state courts.  *See id.*; *Jackson*, 292 F. App'x at 740; 28 U.S.C. § 2254(d).  Relief on Grounds 9 and 10 should be denied.

## I.  Grounds 14, 15, 25, 35: Alleged Errors by Trial Court and Prosecution

Petitioner raised Grounds 14, 15, 25, and 35 for the first time on postconviction review; however, the OCCA incorrectly treated these claims of error as ones that were raised and disposed of on direct appeal.  *See* OCCA Postconviction Order at 5; Pet'r's Postconviction App. at 40-52, 81-83, 111-14 (Propositions IV, V, XV, XXV).  Accordingly, the undersigned reviews these claims of error de novo.  *See Davis*, 695 F.3d at 1073.

### 1.  Ground 14

Petitioner alleges that the trial court violated his Sixth Amendment rights by failing to "grant and/or hear" Petitioner's request to appear pro se and by denying Petitioner's request to present his own closing statement at trial.  Pet. at 35; Pet'r's Postconviction App. at 40-43.  Several months prior to trial, Petitioner submitted a "Notice/Request" to the trial court discussing multiple issues, including his advice to his attorneys regarding relevant case law, and stating:

> I also have a constitutional right to represent myself in court & that if I have an attorney he is merely my agent & is bestowed with the authority I voluntarily grant him/her.  And I hereby seek to exercise such rights by continuing to have my attorney representative & also honoring my request as well as me being able to question all witnesses myself personally at trial before my attorney has finished any questioning of his own and before passing any witness.

OR 22-24 (citation omitted).  During trial, outside of the presence of the jury, Petitioner's counsel informed the court that Petitioner had communicated that he wished to appear pro se, that Petitioner believed his attorneys were "selling him down the river," and that Petitioner would continually "act out" during the trial.  Vol. II Trial Tr. 62-63.  The trial

court then provided a lengthy explanation to Petitioner of the costs and benefits of Petitioner representing himself pro se and of his attorneys' knowledge of trial procedure and the evidence code. Vol. II Trial Tr. 63-71. Following a recess, Petitioner's attorney stated that he and his cocounsel were going to proceed. To confirm that Petitioner wished to proceed with counsel, the judge asked Petitioner if this was his decision as well; Petitioner answered, "Yes, sir." Vol. II Trial Tr. 71.

At the close of the evidence, Petitioner's counsel informed the trial judge that Petitioner "would like to do his own closing arguments." Vol. III Trial Tr. 224. Petitioner, after being denied the opportunity to dismiss his counsel, then presented the trial court with a 14-page statement that he wished to read aloud. Vol. III Trial Tr. 224-27. The trial court reviewed the statement and noted that it was almost all testimonial in nature—e.g., Petitioner made repeated references to his innocence—and therefore inappropriate for closing argument. Vol. III Trial Tr. 227; *cf. Hamilton v. State*, 152 P.2d 291, 295-96 (Okla. Crim. App. 1944) (noting that argument to the jury must be confined to "the evidence and reasonable deductions that may be drawn therefrom"). The trial court denied the request, stating that while the defendant has an absolute right to be involved in all the decisions in the trial process, and "[t]he ultimate decisions belong to the client," Oklahoma law did not permit a defendant to read a prepared statement and testify through closing argument, as Petitioner wished to do. Vol. II Trial Tr. 227-31.

Petitioner's assertion that the trial court refused to hear his request for self- or co-representation is simply untenable—the trial court not only heard his request but engaged in a lengthy discourse as to its merits. *See* Vol. II Trial Tr. 63-71. Petitioner himself then

withdrew that request by expressly stating on the record that he wished to proceed represented by counsel. Vol. II Trial Tr. 71. "[A]n accused has a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v.* Wiggins, 465 U.S. 168, 173 (1984) (citing *Faretta v. California*, 422 U.S. 806, 821 (1975)). Here, Petitioner did not forgo his right to counsel at all: when questioned by the trial judge, he affirmatively represented that he wished to proceed through counsel. Petitioner therefore cannot show that he was denied his right to conduct his own defense in violation of the Sixth Amendment.

After Petitioner chose to be represented by counsel, the trial court was not required to allow Petitioner the "hybrid" representation he sought. *See McKaskle*, 465 U.S. at 183. "A defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense. Such participation also diminishes any general claim that counsel unreasonably interfered with the defendant's right to appear in the status of one defending himself." *Id.* at 182 (discussing participation of standby counsel for pro se defendants). "A trial court's failure to afford a defendant the right of allocution raises neither a jurisdictional nor a constitutional error cognizable in habeas." *Scrivner*, 68 F.3d at 1240. Petitioner has not shown that he had such a right or that he is entitled to federal habeas relief on Ground 14.

2. Ground 15

Petitioner alleges that he was denied his Sixth and Fourteenth Amendment rights due to prosecutorial and trial court misconduct and prejudice. Pet. at 35-36; Pet'r's

Postconviction App. at 43-52 (citing 10 instances of alleged misconduct numbered "A" through "J"). On federal habeas review, this Court considers whether the alleged prosecutorial misconduct deprived the Petitioner of a specific constitutional right or rendered the entire trial fundamentally unfair:

> Ordinarily, a prosecutor's misconduct will require reversal of a state court conviction only where the remark sufficiently infected the trial . . . to make it fundamentally unfair, and, therefore, a denial of due process. Nonetheless, when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair.

*Dodd*, 753 F.3d at 990 (alteration in original) (citation and internal quotation marks omitted). When the invasion of a specific constitutional right is alleged, the Court reviews the harmfulness of the error using the "substantial and injurious effect" standard outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Matthews*, 577 F.3d at 1186. For all other allegations, Petitioner has the "high hurdle" to "show that the alleged misconduct sufficiently infected the trial to make it fundamentally unfair, and, therefore, a denial of due process." *Dodd*, 753 F.3d at 991 (alteration and internal quotation marks omitted).

Because only three of Petitioner's 10 arguments arguably implicate the deprivation of a specific constitutional right, the undersigned addresses these arguments first.

### (a) Claim "D"

Petitioner contends that the State improperly commented upon and used Petitioner's prior felony conviction against him at trial. Pet'r's Postconviction App. at 45-46. After Petitioner testified on direct examination that he had one felony conviction

from 1996 (Vol. II Trial Tr. 195), the State asked him during cross-examination, "[Y]ou admitted to the jurors that you are [a] convicted felon; right?" Petitioner balked, but after the trial court directed him to answer the question, Petitioner answered, "Yes." Vol. II Trial Tr. 205. In closing argument, the prosecuting attorney stated: "Guess what? He's a convicted felon. He knew in those two hours [that Petitioner and Ms. Mahan were arguing and fighting] that somebody is coming. This is not his first trip to the rodeo." Vol. III Trial Tr. 267.

As outlined above, Petitioner's prior felony conviction was sufficiently timely for admission under Oklahoma Statute Title 12, Section 2609(B), *see supra* Part III.D.2.e, and Petitioner has not shown that this evidence was otherwise improperly admitted by the trial court or improperly relied upon by the State. Such evidence of prior convictions is admissible for impeachment purposes provided its probative value outweighs its prejudicial effect. *See Byrd v. Workman*, 645 F.3d 1159, 1169 (10th Cir. 2011); Okla. Stat. tit. 12, § 2609(A). The jury was specifically instructed that Petitioner's prior conviction was offered for impeachment purposes and could not be considered "as proof of evidence or guilt." OR 218 (Jury Instruction No. 20). Petitioner offers no support for his conclusory allegation that his impeachment through such properly admitted evidence amounted to a violation of Petitioner's privilege against compulsory self-incrimination. *Cf. Matthews*, 577 F.3d at 1186 (citing *Donnelly*, 416 U.S. at 643, for proposition that prosecutorial misconduct can violate the privilege against compulsory self-incrimination under the Fifth Amendment). Nor has Petitioner shown that the prosecutor's questioning

or comments improperly characterized this evidence or otherwise infected the proceedings, resulting in a fundamentally unfair trial. *Dodd*, 753 F.3d at 991.

(b) Claims "E" and "I"

In Claims "E" and "I," Petitioner alleges that the State improperly attempted to define the reasonable doubt standard of proof to the jury and to shift the burden of proof onto the defense. *See* Pet'r's Postconviction App. 46, 49; *Dodd*, 753 F.3d at 990-91 (analyzing claim that State improperly characterized its burden of proof to determine if the misconduct "effectively deprived the defendant of a specific constitutional right"); *Morris v. Workman*, 382 F. App'x 693, 696 (10th Cir. 2010) ("Where prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence, a petitioner may obtain relief by demonstrating that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right." (internal quotation marks omitted)).

In support of his contention regarding definition of the standard of proof to the jury, Petitioner points to the State's comment during closing argument: "Beyond a reasonable doubt, that's all we have to prove. Not a shadow of a doubt, not all doubt. Just beyond a reasonable doubt." Vol. III Trial Tr. 266. This was an accurate reference to the State's burden of proof, rather than an attempt to mischaracterize or negate that burden. *Cf. Gordon v. Ward*, 118 F. App'x 434, 436 (10th Cir. 2004) (finding that OCCA's denial of relief on habeas petitioner's claim that the prosecutor had improperly attempted to define "beyond a reasonable doubt" for jury by stating that "'reasonable doubt' does not mean 'beyond a shadow of a doubt' or 'beyond all doubt'" was not

unreasonable or contrary to federal law or an unreasonable determination of the facts in light of the evidence presented); *Walton v. Keith*, No. CIV-09-281-F, 2010 WL 354131, at *13-15 (W.D. Okla. Jan. 27, 2010) (report and recommendation) (finding that prosecutor's remarks as to what the reasonable-doubt standard does *not* mean did not attempt to negate the presumption of innocence), *adopted*, 2010 WL 2927386 (W.D. Okla. July 22, 2010), *and appeal dismissed*, 416 F. App'x 740 (10th Cir. 2011).

In support of the second contention, Petitioner relies on the prosecutor's remark in closing argument that "none of the elements [of the charged crimes] require fingerprints. Judge Elliott is a smart judge. If fingerprint is an element, then he would have put it on here. It's not part of the element." Vol. III Trial Tr. 266. This comment was a proper comment on the evidence presented at trial—i.e., the testimony from a lab technician that she did not test the contents of the safe for fingerprints—and an accurate characterization of the required elements of the charged crimes; the prosecutor's comment did not shift the burden of proof to Petitioner. *See* Vol. II Trial Tr. 181; OR 204, 205; *cf.* Okla. Stat. tit. 22, § 831(6) ("During the argument the attorneys shall be permitted to read and comment upon the instructions as applied to the evidence given . . . ."). Under Oklahoma law, attorneys for both the state and the criminal defendant "have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it." *Frederick v. State*, 37 P.3d 908, 946 (Okla. Crim. App. 2001).

Petitioner additionally objects to the prosecutor's closing remark: "I told him yesterday, if you so innocent or if innocent, why didn't you write it in any of your letter? Do you see him stumbling looking for it. Why? It doesn't exist." Vol. III Trial Tr. 267.

The State was referencing an exchange that had transpired during trial testimony. While being questioned about letters Petitioner had written to Ms. Mahan, Petitioner was asked why he had not proclaimed his innocence in these letters; Petitioner had answered by referring to another letter that was not before him in evidence. Vol. II Trial Tr. 205. The prosecutor's remark during closing argument was "a fair comment on the evidence" and did not misstate Petitioner's testimony or the letters about which he was being questioned. *See Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002). Nor did this remark, which did not draw objection from Petitioner's counsel, attempt to shift the burden of proof onto Petitioner. A prosecutor's closing arguments "'are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear.'" *Dodd*, 753 F.3d at 992 (quoting *Donnelly*, 416 U.S. at 646-47).

Relief should be denied on these claims. *See Dodd*, 753 F.3d at 991; *Morris*; *Gordon*, 118 F. App'x at 436; *Delgado v. Barreras*, No. 97-2007, 1997 WL 785525, at *2 (10th Cir. Dec. 22, 1997) (rejecting habeas claim based on prosecutorial misconduct where "the prosecutor's remarks were not a direct statement on the presumption of innocence" and "the defense made no objection" and therefore any prejudice was not amplified by an objection being overruled). In addition, Petitioner fails to show that the prosecutor's statements rendered Petitioner's trial void of due process or fundamentally unfair. *See Dodd*, 753 F.3d at 991 (noting that failure to object is relevant to assessment of fundamental unfairness).

(c) Claims "A," "B," "C," "F," "G," "H," and "J"

As to Petitioner's remaining misconduct claims, which are not based on any independent and specific deprivation of a constitutional right, the primary question is whether any misconduct rendered the trial fundamentally unfair. This determination is made "only after considering all of the surrounding circumstances, including the strength of the state's case." *Malicoat*, 426 F.3d at 1255.

On Claim "A," Petitioner argues that the State requested an excessive sentence to punish Petitioner for exercising his right to a jury trial. Pet'r's Postconviction App. at 43-44. As the jury was properly instructed, the term of imprisonment mandated by statute was 15 years to life on Petitioner's drug trafficking charge and 4 years to life on Petitioner's possession charge. OR 230, 231; Okla. Stat. tit. 63, §§ 2-401, 2-415. During closing argument, the State submitted to the jury that they needed to give Petitioner 122 or 127 years on the drug trafficking charge, and 45 years on the possession charge, because "[t]hat's what he deserves" and that will "put him out of business." Vol. III Trial Tr. 285-86. These suggestions fell within the statutory range permitted by Oklahoma law (as did the 50- and 4-year sentences actually chosen by the jury), and there is nothing in the record to support Petitioner's bare contention that the State sought these terms as retaliation for Petitioner exercising his constitutional right to a trial by jury or on any other improper basis. *See Dennis*, 222 F.3d at 1258 ("Generally, our review of a sentence [on federal habeas] ends once we determine the sentence is within the limitation set by statute."). Petitioner has not shown that the prosecutor's sentencing suggestion deprived him of a fundamentally fair trial.

Regarding Claim "B," Petitioner broadly claims that the trial court erred and prejudiced Petitioner by admonishing him, not permitting him to speak as he wished, and by giving the jury a break in the middle of closing arguments. Pet'r's Postconviction App. at 44-45. Considering the totality of the trial transcript and the record, Petitioner's argument is meritless. The trial judge took significant measures to ensure Petitioner was permitted to present his defense as he chose, but the trial court also was entitled to control the flow of evidence, to prevent Petitioner from rambling inappropriately, and to coordinate the timing of trial as the court saw fit. *Cf. McKaskle*, 465 U.S. at 173 (noting that an accused has the right to conduct his own defense but must be "able and willing to abide by rules of procedure and courtroom protocol"); *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986) (noting that trial judges retain wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination); Okla. Stat. tit. 22, § 831(6) ("The court . . . may arrange the order in which [the attorneys] may speak . . . ."). Petitioner has not shown a denial of fundamental fairness in this regard.

On Claim "C," Petitioner contends that the State "lied" to the trial court when seeking admission of certain letters that Petitioner had written to Ms. Mahan. Pet'r's Postconviction App. at 45. When seeking to admit five of the 200+ letters that Petitioner had sent to Ms. Mahan, the prosecuting attorney stated to the trial court that she had taken out those letters that referred to prior criminal cases of Petitioner. Vol. II Trial Tr. 44-45. When cross-examining Petitioner, the State asked Petitioner if he had assaulted Ms. Mahan on April 18, 2009. When Petitioner answered "no," the State questioned him regarding one of the letters:

[STATE]: I'll show you what previously entered State Exhibit Number 2, which is some of the letters you wrote. Read the highlight part.

[PETITIONER]: It says, "If I hit you or whatever, it doesn't have to keep happening. Our child will never know that."

. . . .

[STATE]: So if you didn't do anything to her, then why would you write, "If I hit you, or whatever, it doesn't have to keep happening, and our child will never know?"

[PETITIONER]: Because I have another case, she jumped out of a car trying to buy crack when she was pregnant and I tried to stop her. Because I have a another incident on record about that. It has nothing to do with this event.

[STATE]: Okay. So what you – I'll leave that alone.

. . . .

[STATE] You stated earlier when I asked you, "If I hit you, or whatever, it doesn't have to keep happening," and you said that reference to another case. Are you saying this there's another incident that this happened?

[PETITIONER]: There's another incident that I was referring to in that letter. That when you're talking about that.

[STATE]: So there's another incident that you said there is another case. So that you are charged with hitting her; is that correct?

[PETITIONER]: Yes, just we had a domestic, yes.

[STATE] Just answer the question.

[PETITIONER]: That's correct.

Vol. II Trial Tr. 198, 200, 203-04; *see* State's Ex. 2.

Considering the prosecutor's statement to the court in context, Petitioner's assertion that the State intentionally "lied" is unfounded. The prosecutor clearly had believed that the "If I hit you" statement had been made in reference to the events of April 18, 2009, rather than some other incident between Petitioner and Ms. Mahan. Upon Petitioner correcting her, the prosecutor did not unduly emphasize the prior incident and,

when viewed in context of the entire trial, the introduction of the incident did not render the proceedings against Petitioner fundamentally unfair.

On Claim "F," Petitioner asserts that the prosecution argued facts not in evidence by portraying Petitioner as controlling Ms. Mahan. Pet'r's Postconviction App. at 47. The testimony and evidence showed, however, that Ms. Mahan's driver's license and social security card were found in the safe, and Ms. Mahan testified that only Petitioner had access to the locked room in which the safe was stored. *See, e.g.*, Vol. II Trial Tr. 37, 57, 140-41, 143. "The prosecutor properly may comment on the circumstances of the crime made known to the jury during trial." *Hooper*, 314 F.3d at 1172. The prosecutor "possesses reasonable latitude in drawing inferences from the record." *Id.* The State's depiction of Petitioner was a reasonable inference from the evidence and testimony and did not inject fundamental unfairness into the trial proceedings. *See id.*

For Claim "G," Petitioner claims that the State deliberately withheld evidence that had been found in the locked safe—specifically, Ms. Mahan's driver's license and social security card. Pet'r's Postconviction App. at 47-48. To the contrary, it is clear from the trial testimony that the police took a photograph of the documents and that defense counsel had received a copy of the photograph prior to trial. *See* Vol. II Trial Tr. 140-43. Petitioner's claim that the State kept this evidence from the defense is meritless.

In Claim "H" Petitioner argues that the State introduced false testimony by stating in closing argument:

> And, of course, you heard his story, she was drunk. "I was just trying to help her." You know what? If she were drunk and drinking alcohol that night, don't you think that they would have brought it out that they could,

the officers smell her, she couldn't hardly do anything? Well, she was able to write that statement. Nobody said she was drunk, except him.

Vol. III Trial Tr. 266; Pet'r's Postconviction App. at 48-49. Petitioner also alleges that the police officers' written report showed that they suspected drug and alcohol use by Ms. Mahan on the night in question but that Officer Miller falsely testified in court regarding Ms. Mahan's demeanor without mentioning her being under the influence of drugs or alcohol. Pet'r's Postconviction App. at 48-49 (citing Vol. II Trial Tr. 79).

"The prosecution may not deliberately deceive the court or jury by presenting false testimony." *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 569 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001). "The petitioner bears the burden of proving the prosecutor knowingly presented false testimony." *Id.* To meet this burden, Petitioner must establish that the testimony was false, material, and "knowingly and intentionally used by the government to obtain a conviction." *See McBride v. United States*, 446 F.2d 229, 232 (10th Cir. 1971).

Petitioner cannot meet his burden. The written incident report he relies on for the alleged truth of Ms. Mahan's intoxicated or drug-influenced state the night of Petitioner's arrest states: "OFFENDER(S) SUSPECTED OF USING" "AT TIME OF OFFENSE OR SHORTLY BEFORE OFFENSE OCCURRED"; Officer Brown then checked the boxes for "DRUGS" and "ALCOHOL." Pet'r's Supp. Br. at 18-19. Ms. Mahan is the "victim" rather than the offender on that form and was not arrested for the events of April 18, 2009. *See id.*; Vol. II Trial Tr. 101-02. Accordingly, Petitioner has not shown that the State's failure to elicit testimony that Ms. Mahan had been drinking or using drugs that

night was false or misleading, much less material or knowingly and intentionally used against Petitioner.

Finally, Petitioner alleges in Claim "J" that the trial court erred in allowing the testimony of narcotics investigator Danny Peterson because this testimony was overly speculative and prejudicial to Petitioner. Pet'r's Postconviction App. at 49-51 (citing Okla. Stat. tit. 12, § 2703). To the extent Petitioner is arguing that the testimony was not properly admissible under Oklahoma law, this is not a cognizable federal habeas claim. *See Estelle*, 502 U.S. at 67-68. Alternatively, to the extent Petitioner is arguing that Mr. Peterson's testimony was so improper so as to render the trial fundamentally unfair, this conclusion is not supported by the record and trial transcript. Mr. Peterson testified regarding his extensive training and experience in dealing with narcotics and his specialized knowledge of the various actors in the drug-dealing industry. Vol. II Trial Tr. 148-50, 153-58. Mr. Peterson testified that he was asked to assist the Midwest City police by testing the contents of the drugs that were found in the safe. Vol. II Trial Tr. 150-51. Mr. Peterson gave his opinion that the drugs contained in the safe were worth at least $3000 and that the drugs' quantities, packaging, and accompanying items indicated that the drugs belonged to someone selling drugs rather than buying them for personal use. Vol. II Trial Tr. 151-59. Mr. Peterson denied any knowledge of whether Petitioner personally was selling drugs and specifically stated that his opinions were based on his own training and experience. Vol. II Trial Tr. 165-66.

None of Mr. Peterson's testimony was unduly speculative or purported to be an in-depth scientific analysis of the drugs that were found. The jury was specifically

instructed that they were to give the testimony of witnesses "skilled in their line of endeavor or who possess peculiar knowledge acquired by study, observation, and practice" "such weight and value as [they] deem it is entitled to receive" and that they were "not required to surrender [their] own judgment to that of any person testifying." OR 216 (Jury Instruction No. 18). Petitioner cannot show that Mr. Peterson's testimony resulted in a violation of his due process rights. *Cf. United States v. Robinson*, 978 F.2d 1554, 1563-66 (10th Cir. 1992) (rejecting challenge on direct appeal where expert "explained the meaning of the physical evidence" and expert's "specialized knowledge did assist the trier of fact in understanding the evidence").

     3.  Ground 25

Petitioner alleges in Ground 25 that the evidence presented at trial was insufficient for him to be arrested for, and for a jury to have found beyond a reasonable doubt that he committed, the crime charged in Count 3 - Domestic Abuse (Assault and Battery). *See* Pet. at 43. Regarding the arrest, Petitioner asserts that his warrantless arrest was prohibited by Oklahoma Statute Title 22, Section 196(6), which prescribes:

> A peace officer may, without a warrant, arrest a person:
>
> Anywhere, including a place of residence of the person, if the peace officer has probable cause to believe the person within the preceding seventy-two (72) hours has committed an act of domestic abuse as defined by [Oklahoma Statutes Title 22, Section 60.1], although the assault did not take place in the presence of the peace officer. A peace officer may not arrest a person pursuant to this section without first observing a recent physical injury to, or an impairment of the physical condition of, the alleged victim[.]

Okla. Stat. tit. 22, § 196(6).

Petitioner contends that the arresting officers "did not have probable cause or view injuries and had no clue who if anyone committed a domestic offense" and so were not authorized to take him under arrest for domestic abuse. Pet'r's Postconviction App. at 30. To the contrary as explained above, the officers heard Ms. Mahan screaming and crying from outside the door when they arrived at Apartment #1404F. After no one opened the door, they forced the door open, and at that point Petitioner tried to block the officers from entering a bathroom in which Ms. Mahan had segregated herself for the reasonably-presumed purpose of escaping Petitioner. The officers, after taking Petitioner into custody, found Ms. Mahan very upset, crying, and shaking in the bathroom.

As an initial matter, habeas relief would not lie for any violation of Section 196(6), a state statute. *See Estelle*, 502 U.S. at 67-68. Further, Petitioner has not shown that any such violation occurred. The police officers' visual and auditory observations of Petitioner's actions and Ms. Mahan's screams/cries were sufficient for the officers to find probable cause that Petitioner had committed a recent act of domestic abuse that impaired Ms. Mahan's physical condition. *See, e.g.*, Vol. II Trial Tr. 76-78, 98-100; Okla. Stat. tit. 22, § 196(6).

With respect to whether there was sufficient evidence to convict Petitioner of domestic abuse (assault and battery), the evidence and testimony recited above show that a rational trier of fact could have found the essential elements of this crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 309, 319, 324 n.16. Under Oklahoma law and as relevant to this case, the elements of Count 3 - Domestic Abuse (Assault and Battery) are: (1) willful; (2) unlawful; (3) attempting or offering to use force or violence;

and (4) the use of force or violence; (5) against the person of Christal Mahan with whom Petitioner shared a residence. Okla. Unif. Crim. Jury Instruction No. 4-26A; OR 206 (Jury Instruction No. 10); Okla. Stat. tit. 21, § 644(C). The jury was entitled to believe Ms. Mahan's version of events over Petitioner's, including her contentions that Petitioner lived at Apartment #1404F with Ms. Mahan and that Petitioner had willfully used force on the night in question by holding her down on the bed. Vol. II Trial Tr. 31-35. Further, Petitioner admitted in his testimony that he had grabbed Ms. Mahan's wrists. Vol. II Trial Tr. 199-200.

The Court "may not weigh conflicting evidence" but must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Lucero*, 133 F.3d at 1312 (internal quotation marks omitted). Considering the testimony and evidence discussed above, a rational trier of fact could find beyond a reasonable doubt that Petitioner committed the crime of domestic abuse (assault and battery). *See Jackson*, 443 U.S. at 319; Okla. Stat. tit. 21, § 644(C). Relief is not warranted on Ground 25.

4. Ground 35

In Ground 35, Petitioner argues that his appellate counsel was ineffective for failing to help Petitioner raise and develop arguments in his pro se Supplemental Brief on direct appeal. Pet. at 46; Pet'r's Postconviction App. at 111-14. Even liberally construed and with reference to the Postconviction Application (Proposition XXV), Petitioner's argument is unclear at best and constitutes an attempt to present a wide swath of his alleged errors within the ineffective-assistance claim, even those errors that actually were raised on direct appeal (e.g., sufficiency of the evidence; cumulative error; and that

Petitioner's warrantless arrest was undertaken without probable cause, *see* Pet'r's Postconviction App. at 112). With respect to those errors that actually were raised on direct appeal, Petitioner cannot show that his appellate counsel was ineffective or that he was prejudiced by his appellate counsel's actions. *Cf. United States v. Sauceda*, 473 F. App'x 861, 862 (10th Cir. 2012) (rejecting habeas ineffective-assistance claim where counsel had in fact raised the issue argued by petitioner). With respect to the other alleged errors (actual innocence; trial counsel's failure regarding 911 call; prosecutorial misconduct), Petitioner's one-sentence argument is incoherent and cannot show ineffective appellate assistance in any event. As outlined herein in Parts III.D.2.a, III.D.4.a, III.I.2, and III.J.4, Petitioner has not shown that these three underlying constitutional arguments have merit and therefore cannot show prejudice from their omission on appeal under *Strickland*. Habeas relief is not warranted. *See Dennis*, 222 F.3d at 1250.

### J. Grounds 18, 19, 24, 29, 30, 31: Alleged Errors Regarding Sentencing, Actual Innocence, Conflict of Interest, Appellate Briefing, and Ineffective Assistance of Appellate Counsel

#### 1. Ground 29

In Ground 29, Petitioner claims he received ineffective assistance of appellate counsel due to his appellate counsel failing to argue, and request an evidentiary hearing and transcripts to prove, misconduct by the State, the trial court, and his trial counsel. Pet. at 44-45. Petitioner raised this claim in his Supplemental Brief on direct appeal, and the OCCA denied relief, holding: "Appellant's claim that appellate counsel was ineffective for not raising these claims in her own brief is moot, as Appellant was

permitted to raise them himself in a supplemental brief." OCCA Op. at 5 n.1; *see* Pet'r's Supp. Br. at 10. Petitioner has not shown that the OCCA's disposition of his ineffective assistance of appellate counsel claim was unreasonable or contrary to *Strickland*. Regardless of his appellate counsel's purported failures, Petitioner raised both the factual basis for his underlying misconduct claims and his allegations regarding his trial and appellate counsel's ineffectiveness thereon in his Supplemental Brief, which was considered on the merits by the OCCA. *See* Pet'r's Supp. Br. at 14-16; OCCA Op. at 5 n.1. Petitioner therefore cannot show any prejudice from his counsel's performance and cannot show that the OCCA's determination of this issue warrants habeas relief under 28 U.S.C. § 2254(d)(1).

2. Grounds 18, 19, 24, 30, 31

Petitioner first raised his remaining five claims to the trial court in his Postconviction Application. *See* Pet. at 39, 42-43, 45; Pet'r's Postconviction App. at 58-67, 77-81, 94-100 (Propositions VIII, IX, XIV, XX, XXI). In affirming the denial of postconviction relief, the OCCA declined to find these propositions of error waived and instead denied them on the merits. OCCA Postconviction Order at 5, 6-7. As set forth below, Petitioner cannot show that the OCCA's determination as to any of these issues was unreasonable or contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d).

3. Ground 18

In Ground 18, Petitioner argues that the punishment imposed upon him is excessive, in violation of the Eighth Amendment. *See* Pet. at 39. The OCCA disagreed, holding:

> Thomas alleges his sentence was excessive, citing to an offer of a plea agreement he claims the State made wherein they offered him fifteen to twenty years for Count 1. Assuming the claim of a plea offer is true, this revelation does not constitute proof that his sentence, as assessed by the jury is excessive.

OCCA Postconviction Order at 6; *see* Vol. I Trial Tr. 3-4 (Petitioner affirming to trial court that he understood the State's offer of "20 to do," which previously had been "15 to do," but desired to refuse those recommendations and proceed to jury trial).

The mere fact that Petitioner was offered—and voluntarily refused—a sentence lighter than the one he received does not render his sentence violative of the Eighth Amendment or Oklahoma law. The Court "afford[s] wide discretion to the state trial court's sentencing decision," *Dennis*, 222 F.3d at 1258, and "the length of sentence is almost entirely a matter of legislative prerogative," *Gaines v. Hess*, 662 F.2d 1364, 1370 (10th Cir. 1981) (citing *Rummel v. Estelle*, 455 U.S. 263 (1980)). *See also Saccato v. Wilson*, 510 F. App'x 693, 695-97 (10th Cir. 2013) (agreeing with district court that petitioner's argument of an excessive sentence was a state-law claim not cognizable in a federal habeas proceeding).

> The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. "Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, [560 U.S. 48, 59 (2010)] (citing *Weems v.*

73

> *United States*, 217 U.S. 349, 367 (1910)). However, the proportionality requirement is "'narrow'" and merely "'forbids only extreme sentences that are grossly disproportionate to the crime.'" *Id.* (citation omitted).
>
> To determine if a sentence is "grossly disproportionate," the Court must compare the gravity of the offense and the severity of the sentence. *Id.* "Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir.2006) (citation omitted). On rare occasions, however, the crime and the sentence bear a gross disproportion to one another. *See United States v. Gurule*, 461 F.3d 1238, 1247 (10th Cir.2006). In these extraordinary circumstances, the sentence will be considered unconstitutional. *See Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case.").

*Winchester v. Jones*, No. CIV-10-307-R, 2011 WL 2652760, at *16 (W.D. Okla. June 3, 2011) (report and recommendation), *adopted*, 2011 WL 2636540 (W.D. Okla. July 6, 2011), *and appeal dismissed*, 455 F. App'x 811 (10th Cir. 2011).

Here, there was ample evidence to convict Petitioner on the drug-related charges. *See supra* Part III.C. Further, as outlined above, Petitioner's 50-year sentence on Count 1 and 4-year sentence on Count 2 were within the limits imposed by Oklahoma law. *See supra* Part III.I.2. Regardless of what sentence Petitioner was offered at the plea bargaining phase, he has not demonstrated that the sentence rendered at the close of his criminal trial was grossly disproportionate to the gravity of the crimes committed. Petitioner has not shown that the OCCA's rejection of this claim was unreasonable or contrary to clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

4. Ground 19

Petitioner asserts in Ground 19 that he is actually innocent of the crimes upon which he was convicted. *See* Pet. at 39. The OCCA denied relief on this claim, holding that Petitioner

> claims he is innocent of the charged offenses, but presents no evidence of his innocence. Instead, Thomas's 115-page post-conviction brief and 300-plus pages of attachments consist of numerous citations to various case law and statutes, which Thomas strings together as "proof" of his claims. We find no evidence in this voluminous, rambling record to support a finding that Thomas is factually innocent of the charged offenses.

OCCA Postconviction Order at 6.

Even after a careful review, Petitioner's vague and incoherent Petition and Postconviction Application do not adequately point to any evidence or argument that was not before the OCCA when the appellate court denied relief and do not reasonably show that the OCCA's legal conclusion and factual findings should not stand. *See* 28 U.S.C. §§ 2254(d), (e)(1); Pet. at 39 (stating without explanation that Petitioner is presenting "evidence the jury trial did not have along with his claim of innocence"). The Court therefore cannot find that the OCCA's determination was unreasonable or contrary to federal law or an unreasonable determination of the facts under § 2254(d).

5. Ground 24

Petitioner next asserts that his trial counsel had a conflict of interest that resulted in trial counsel failing to use valid strategy or to provide effective assistance. Pet. at 42-43. In denying relief on this claim, the OCCA stated: "Thomas alleges that trial counsel should have recused because he and Thomas had a conflict, but the explanation of that

alleged conflict once again is a recitation of case law, statutes, citations and Thomas's unsubstantiated claims of this alleged conflict." OCCA Postconviction Order at 6.

In his habeas Petition, Petitioner does no better in providing an adequate explanation of any conflict with his trial counsel. Petitioner simply refers to his postconviction filings (which were before the OCCA) and broadly states: "Coun[se]l did not use valid strategy or provide effective assistance because counsel did not communicate with client & viewed defendant guilty & Stated he did not have a job, etc. as demonstrated in arguments and attachments the defendant did have a job contrary to counsel[']s belie[f] & check stubs, etc. counsel was not concerned or aware of due to failure to communicate." Pet. at 42. Such conclusory and incomplete allegations do not establish that "a conflict of interest actually affected the adequacy of [trial counsel's] representation." *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980). Nor does the transcript support Petitioner's allegation that his trial counsel lacked concern for or sought to incriminate Petitioner—to the contrary, both of Petitioner's trial attorneys showed significant concern for Petitioner's well-being and exercised considerable restraint in the face of dealing with a client who resisted their counsel. *See, e.g.*, Vol. II Trial Tr. 58, 62-63, 71. The OCCA's rejection of this claim does not warrant habeas relief pursuant to 28 U.S.C. § 2254(d).

### 6. Grounds 30 and 31

Petitioner contends that the OCCA erred on direct appeal by striking his pro se briefs and that his appellate counsel was ineffective for not informing Petitioner of an appellate motion filed by the State that sought to strike one of Petitioner's pro se briefs.

Pet. at 45. As indicated by the OCCA, however, none of these preliminary issues prejudiced Petitioner: ultimately, the OCCA "allowed Thomas to file his *pro se* brief and addressed his claims on direct appeal." OCCA Postconviction Order at 6. Petitioner has not shown that he was prejudiced simply because the OCCA considered his third pro se brief, rather than one of his first two briefs. Further, the record shows that rather than prejudicing Petitioner, Petitioner's appellate counsel successfully sought to have his third pro se brief stricken so that it could be refiled in a manner that would comply with the OCCA's rules and allow Petitioner's pro se arguments to be considered on direct appeal. *See Thomas v. State*, No. F-2010-237 (Okla. Crim. App.) (docket entry of Mar. 18, 2011). In other words, Petitioner was aided by appellate counsel's actions, and it has not been shown that the OCCA's rejection of these claims of error is unreasonable or contrary to federal law or based upon an unreasonable determination of the facts in light of the evidence before the OCCA. *See* 28 U.S.C. § 2254(d).[8]

## RECOMMENDATION

For the reasons set forth above, it is recommended that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. No. 1) be DENIED.

---

[8] In addition to the claims of ineffective assistance of appellate counsel claims raised in Grounds 29, 31, and 35 that are individually discussed herein, Petitioner attempts to obtain relief on nearly every substantive claim in the Petition by appending the clause "& Appeal counsel was ineffective for failing to raise the issues" or similar language to that effect. *See* Pet. at 33, 34, 35, 36, 37, 39, 40, 41, 42, 43, 44, 46 (Grounds 11-27, 32-33). Even assuming that inclusion of this phrase was sufficient to raise a cognizable habeas claim, the undersigned has considered this allegation together with each underlying constitutional claim where the argument is noted, pursuant to the standard of review that would apply to an ineffective assistance of appellate counsel claim in each instance, and has identified no Ground of the Petition where relief should be granted in this respect. *See Dennis*, 222 F.3d at 1250; *Malicoat*, 426 F.3d at 1241.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by April 23, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 2nd day of April, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE